**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

FINANCIAL TECHNOLOGY PARTNERS
LP AND FTP SECURITIES LLC,

        Plaintiffs,

v.

CIRCLE INTERNET FINANCIAL
LIMITED, PLUTO HOLDINGS, INC.,
SEEDINVEST TECHNOLOGY LLC, SI
SECURITIES LLC AND SI ADVISORS I,
LLC,

        Defendants.

No. 1:24-cv-04717-VM-SDA

Judge Victor Marrero
Magistrate Judge Stewart D. Aaron

---

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF**
**FINANCIAL TECHNOLOGY PARTNERS L.P. AND**
**FTP SECURITIES LLC'S MOTION TO REMAND TO STATE COURT**

Matthew A. Schwartz
Benjamin R. Walker
Christopher M. Weldon
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
(212) 558-4000
schwartzmatthew@sullcrom.com
walkerb@sullcrom.com
weldonc@sullcrom.com

*Attorneys for Plaintiffs Financial Technology*
*Partners L.P. and FTP Securities LLC*

September 19, 2024

**TABLE OF CONTENTS**

**PRELIMINARY STATEMENT** ..................................................................................................1

**LEGAL STANDARD** ..................................................................................................................1

I. **IT IS NOT "LEGALLY IMPOSSIBLE" FOR FT PARTNERS' BREACH OF CONTRACT CLAIMS TO SUCCEED**...........................................................................2

    A.    The Circle Subsidiaries Are Bound by the SeedInvest Agreement .........................2

    B.    The Circle Subsidiaries at Least Potentially Breached Their Obligations Under the SeedInvest Agreement ...............................................................................3

II. **IT IS NOT "LEGALLY IMPOSSIBLE" FOR FT PARTNERS' UNJUST ENRICHMENT CLAIM TO SUCCEED**..........................................................................6

    A.    The SeedInvest Agreement Does Not Clearly Bar FT Partners' Unjust Enrichment Claim ....................................................................................................7

    B.    FT Partners Has at Least a Possibility of Showing That the Services Performed Were for the Circle Subsidiaries as Well as for Circle ..........................9

**CONCLUSION** .........................................................................................................................10

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Aventine Inv. Mgmt., Inc.* v. *Canadian Imperial Bank of Commerce*,
   265 A.D.2d 513 (2d Dep't 1999) ................................................................................6

*Battaglia* v. *Shore Parkway Owner LLC*,
   249 F. Supp. 3d 668 (E.D.N.Y. 2017) .........................................................................8

*Briarpatch Ltd., L.P* v. *Phoenix Pictures, Inc.*,
   373 F.3d 296 (2d Cir. 2004) ................................................................................ passim

*Castillo* v. *BJ's Wholesale Club*,
   645 F. Supp. 3d 85 (E.D.N.Y. 2022) ...........................................................................1

*Chase* v. *Am. Stock Exch. L.L.C.*,
   2003 WL 23281592 (S.D.N.Y. Mar. 14, 2003) ..........................................................7

*Dexter* v. *A C & S Inc.*,
   2003 WL 22725461 (S.D.N.Y. Nov. 18, 2003) ..........................................................1

*Hidden Brook Air, Inc.* v. *Thabet Aviation Intern. Inc.*,
   241 F. Supp. 2d 246 (S.D.N.Y. 2002) .........................................................................2

*Jayne* v. *Royal Jordanian Airlines Corp.*,
   502 F. Supp. 848 (S.D.N.Y. 1980) ..............................................................................2

*Kagan* v. *K-Tel Ent., Inc.*,
   172 A.D.2d 375 (1st Dep't 1991) ........................................................................9, 10

*Lee* v. *Kylin Mgmt. LLC*,
   2019 WL 917097 (S.D.N.Y. Feb. 25, 2019) ...............................................................7

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
   962 F. Supp. 2d 606 (S.D.N.Y. 2013) .........................................................................9

*M/A-Com, Inc.* v. *State*,
   78 A.D.3d 1293 (3d Dep't 2010) .................................................................................9

*Manhattan Chrystie St. Dev. Fund, LLC* v. *215 Chrystie Inv'rs LLC*,
   227 A.D.3d 621 (1st Dep't 2024) ................................................................................8

*Matthews* v. *Symbion Power LLC*,
   69 Misc. 3d 269 (N.Y. Sup. Ct. 2020) ........................................................................8

*Monex Fin. Servs., Ltd.* v. *Dynamic Currency Conversion, Inc.*,
  62 A.D.3d 675 (2d Dep't 2009) ..................................................................................10

*P&G Auditors & Consultants, LLC* v. *Mega Int'l Commercial Bank Co., Ltd.*,
  2019 WL 4805862 (S.D.N.Y. Sept. 30, 2019) ............................................................9

*Skanga Energy & Marine Ltd.* v. *Arevenca S.A.*,
  875 F. Supp. 2d 264 (S.D.N.Y. 2012) ..........................................................................2

*Stan Winston Creatures, Inc.* v. *Toys "R" Us, Inc.*,
  314 F. Supp. 2d 177 (S.D.N.Y. 2003) ..........................................................................1

*TransPerfect Glob., Inc.* v. *Lionbridge Techs., Inc.*,
  2020 WL 1322872 (S.D.N.Y. Mar. 20, 2020) ............................................................8

*Trina Solar US, Inc.* v. *Jasmin Solar Pty Ltd.*,
  954 F.3d 567 (2d Cir. 2020) .........................................................................................3

**PRELIMINARY STATEMENT**

Defendants do not dispute that four of the five Defendants—Pluto Holdings, LLC, SI Securities, LLC, SI Advisors I, LLC, and SeedInvest Technology, LLC (together, "Circle Subsidiaries")—are not diverse from FT Partners. Instead, Defendants' sole argument opposing remand is that the Circle Subsidiaries' citizenship can be disregarded because FT Partners fraudulently joined them as Defendants, and thus complete diversity and jurisdiction in this Court exist. To prevail, Defendants bear the "heavy burden" of showing that there is "no possibility" that FT Partners could state a claim against the Circle Subsidiaries. *Briarpatch Ltd., L.P* v. *Phoenix Pictures, Inc.*, 373 F.3d 296, 302 (2d Cir. 2004). Defendants have come nowhere close to doing so. To the contrary, FT Partners has plainly pled viable claims against the Circle Subsidiaries for both breach of contract and unjust enrichment. FT Partners therefore undoubtedly has at least some "possibility" of recovery, and Defendants' fraudulent joinder argument must fail.

**LEGAL STANDARD**

Defendants have a "heavy burden" to prevail on their fraudulent joinder theory. *Id.* Specifically, Defendants must prove "by clear and convincing evidence, with all factual and legal ambiguities resolved in favor of plaintiff," that "there is no possibility that the claims against [the Circle Subsidiaries] could be asserted in state court." *Id.* "[I]t is not even enough for [] Defendants to show that Plaintiffs' cause of action against [the Circle Subsidiaries] would not survive a motion to dismiss." *Dexter* v. *A C & S Inc.*, 2003 WL 22725461, at *2 (S.D.N.Y. Nov. 18, 2003). Instead, it must be "legally impossible" for the Circle Subsidiaries "to be held liable under New York law." *Stan Winston Creatures, Inc.* v. *Toys "R" Us, Inc.*, 314 F. Supp. 2d 177, 183 (S.D.N.Y. 2003). And the relevant pleading standard is "New York's liberal pleading rules," under which "a plaintiff need only provide 'at least basic information concerning the nature of a plaintiff's claim and the relief sought.'" *Castillo* v. *BJ's Wholesale Club*, 645 F. Supp. 3d 85, 91 (E.D.N.Y. 2022).

## I. IT IS NOT "LEGALLY IMPOSSIBLE" FOR FT PARTNERS' BREACH OF CONTRACT CLAIMS TO SUCCEED.

### A. The Circle Subsidiaries Are Bound by the SeedInvest Agreement.

Despite FT Partners pleading that the Circle Subsidiaries are parties to the SeedInvest Agreement (Compl. ¶ 317), Defendants argue that because the Circle Subsidiaries did not themselves sign the Agreement, they are not bound by it. (Opp. at 12.) But Defendants admit that Circle entered into the Agreement "on behalf of itself and on behalf of" the Circle Subsidiaries. (SeedInvest Agreement at 1; Compl. ¶ 17; Opp. at 15.) "It is black letter law that an agent binds his principal when he enters into a contract within the scope of his authority." *Hidden Brook Air, Inc.* v. *Thabet Aviation Intern. Inc.*, 241 F. Supp. 2d 246, 260 (S.D.N.Y. 2002) (applying New York law). Here, there is not "no possibility" that a New York court could find that Circle (as agent) bound the Circle Subsidiaries (as disclosed principals) to the Agreement, especially after resolving "all factual and legal ambiguities" "in favor of plaintiff." *Briarpatch Ltd.*, 373 F.3d at 302.

Indeed, there is a more than colorable basis to find that Circle had actual authority to bind the Circle Subsidiaries. The SeedInvest Agreement expressly provides that each of the Circle Subsidiaries was then a "wholly-owned subsidiary" of Circle. (SeedInvest Agreement at 1.) And "[t]he relationship of parent and subsidiary . . . gives rise to an inference of a broad agency relationship between the two." *Jayne* v. *Royal Jordanian Airlines Corp.*, 502 F. Supp. 848, 856 (S.D.N.Y. 1980). This is more than enough to make it possible that a New York court would conclude that FT Partners has alleged an actual agency relationship. *See Skanga Energy & Marine Ltd.* v. *Arevenca S.A.*, 875 F. Supp. 2d 264, 269-70 (S.D.N.Y. 2012).

Defendants' only response is that an agent does not bind a disclosed principal when "'the contract explicitly excludes'" that principal. (Opp. at 15 (quoting *Trina Solar US, Inc.* v.

-2-

*Jasmin Solar Pty Ltd.*, 954 F.3d 567, 571 (2d Cir. 2020).)  But there is no such exclusion here. Defendants point to Sections 7(d) (misidentified as Section 9) and 10 of the SeedInvest Agreement, which state, respectively, that FT Partners had "duties solely to the Company," and that the SeedInvest Agreement "shall be binding upon the Company, FT Partners and each of their respective successors and assigns."  Neither provision "explicitly exclude[s]" the Circle Subsidiaries.  While the language *includes* certain entities—such as "successors or assigns" of Circle, which the Circle Subsidiaries could be—it *excludes* none.  Moreover, even if FT Partners did not have express duties to the Circle Subsidiaries, the Circle Subsidiaries could be bound by the SeedInvest Agreement and have duties to FT Partners, such as the implied covenant of good faith and fair dealing.  Finally, even if those provisions could somehow be read to "explicitly exclude" every entity other than the "Company," that would not explicitly exclude the Circle Subsidiaries because, as discussed below, the SeedInvest Agreement is ambiguous as to whether the defined term "Company" includes the Circle Subsidiaries.

The cases Defendants cite (at 15) are inapposite.  In neither case was the contract entered into "on behalf of" the principal.  Moreover*, Trina Solar* confirms that, in determining whether a party is "explicitly excluded as a principal," a court must "consider the language and structure of the Contract as a whole."  954 F.3d at 571.  As explained below, that language and structure creates an ambiguity as to whether the Circle Subsidiaries are included in the "Company."

There is therefore at least some "possibility" that, after resolving "all factual and legal ambiguities" "in favor of plaintiff," a New York court would conclude that Circle bound the Circle Subsidiaries to the SeedInvest Agreement as their agent.  *Briarpatch Ltd.*, 373 F.3d at 302.

**B.  The Circle Subsidiaries at Least Potentially Breached Their Obligations Under the SeedInvest Agreement.**

Despite FT Partners pleading that the Circle Subsidiaries breached the SeedInvest

Agreement (*see* Compl. ¶¶ 316-20, 327-32), Defendants argue that, under the Agreement, "the obligations at issue" supposedly "attach only to Circle." (Opp. at 16.) Defendants rely on the fact that the SeedInvest Agreement: (i) imposes express obligations on the "Company" (*see*, *e.g.*, SeedInvest Agreement at § 2(a)); and (ii) attempts to define "Circle Internet Financial Limited" as the "Company" (*id.* at 1). This argument fails.

        1.    ***The SeedInvest Agreement is, at a minimum, ambiguous as to whether "Company" means Circle alone or also includes the Circle Subsidiaries.*** Specifically, a number of the Agreement's provisions *assume* that SeedInvest is included in the Company, and the Agreement would not function properly if "Company" were read to mean Circle alone.

*First*, portions of the Agreement make no sense without including SeedInvest in the "Company." Section 6 contains a "tail" provision, under which, following certain terminations, "FT Partners will be entitled to any applicable Transaction Fee if, within twelve (12) months of the effective date of such termination . . . the Company consummates or enters into any agreement that subsequently results in any Transaction." This provision is intended to prevent Defendants from using FT Partners' work to get to the brink of signing an agreement for a Transaction and then terminating FT Partners to avoid a fee. But under Defendants' reading, this anti-loophole provision has a major loophole: since it is only triggered if "*the Company* consummates or enters into any agreement," Defendants could avoid liability for a fee by having the Circle Subsidiaries alone enter into the Transaction.[1]

*Second*, the SeedInvest Agreement is clear that FT Partners will serve as advisor to

---

[1] Similarly, Section 2(c) of the SeedInvest Agreement provides that FT Partners shall receive "twenty percent" of any termination fee that "*the Company* receives" "in connection with the termination or abandonment of any proposed Transaction." Defendants' interpretation would allow Defendants to deny FT Partners its share of any such fee by structuring a transaction agreement so that any termination fee is paid to one of the Circle Subsidiaries.

*both* Circle and the Circle Subsidiaries: FT Partners was "engaged by Circle Internet Financial Limited (the 'Company') on behalf of itself and on behalf of [the Circle Subsidiaries] as *their* financial and strategic advisor." (SeedInvest Agreement at 1 (emphasis added).) The Circle Subsidiaries were thus FT Partners' clients. As the SeedInvest Agreement expressly set forth only the "*Company's*" rights and obligations, there would be a number of absurd results if the Court accepted Defendants' reading that "Company" means Circle alone. For example, FT Partners would not be required to provide any services to the Circle Subsidiaries: under Defendants' interpretation, those services, such as "advising the Company on its preparation for any potential Transaction," would be limited to Circle alone. (*See* SeedInvest Agreement, § 1.) This makes no sense: the purpose of the Agreement was to secure FT Partners' services in either selling the Circle Subsidiaries or conducting a capital raise for them. Doing so would require that FT Partners advise and assist the Circle Subsidiaries, not just Circle.

Moreover, under Section 7(c), the "Company acknowledges and agrees that FT Partners' advice is for the use and information of the Company's management and board of directors" alone, and "may not be relied upon by any other person." The "Company" further agreed that "[t]he Company will not disclose such advice to others" (with certain exceptions not relevant here). (*Id.*) It would be absurd for the Circle Subsidiaries, as FT Partners' own clients, to be barred from hearing its advice. Furthermore, Section 7(d) of the SeedInvest Agreement provides that FT Partners would have "duties solely to the Company." Thus, Defendants' interpretation would mean that FT Partners would have no duties to four of its five clients. Relatedly, the Circle Subsidiaries would be FT Partners' clients and yet have no rights against FT Partners: Section 10 provides that no person besides "the Company, FT Partners and each of their respective successors and assigns" shall have "any rights or remedies hereunder."

These provisions demonstrate that the SeedInvest Agreement is at best ambiguous as to whether "Company" includes the Circle Subsidiaries. If it does, then the Circle Subsidiaries have obligations under the Agreement and breached those obligations in two ways. *First*, Section 2 imposes on "the Company," and thus both Circle and the Circle Subsidiaries, an obligation to pay FT Partners a Transaction Fee for the SeedInvest Acquisition. (*See* Compl. ¶¶ 109, 295-99.) *Second*, Section 6 imposes strict requirements for any termination, which were not met here. (*See* Compl. ¶¶ 261-81.) The Circle Subsidiaries violated that provision by acquiescing to and ratifying Circle's invalid termination of the SeedInvest Agreement. (*See* Compl. ¶ 319(a).) For example, after the purported termination, Circle "ceased paying the agreed-upon quarterly retainer," which was an obligation of "the Company." (Compl. ¶ 281; SeedInvest Agreement, § 2(a).) Once Circle stopped fulfilling the "Company's" obligations, the Circle Subsidiaries were required to do so.

    **2.** ***The Circle Subsidiaries Breached the Implied Covenant.*** Even if "Company" unambiguously means Circle alone, the Circle Subsidiaries are still parties to the SeedInvest Agreement and thus bound by its implied covenant. *Aventine Inv. Mgmt., Inc.* v. *Canadian Imperial Bank of Commerce*, 265 A.D.2d 513, 513-14 (2d Dep't 1999). Here, the Circle Subsidiaries violated that covenant by participating in a not-in-good-faith termination that sought to "bully FT Partners into accepting a lower fee than it was entitled to." (Compl. ¶¶ 327-32.) That the termination notice had Circle's name on it alone does not absolve the Circle Subsidiaries: the Circle Subsidiaries could have, but did not, continue to perform their obligations, including treating the Agreement as still in effect, confirming they did not act in good faith.

## II. IT IS NOT "LEGALLY IMPOSSIBLE" FOR FT PARTNERS' UNJUST ENRICHMENT CLAIM TO SUCCEED.

Even if the Circle Subsidiaries are not parties to the SeedInvest Agreement, they

are still valid parties in this action because they were unjustly enriched. (Compl. ¶¶ 340-46.) Both of Defendants' arguments that the Circle Subsidiaries are not liable on this claim are baseless.

        **A.    The SeedInvest Agreement Does Not Clearly Bar FT Partners' Unjust Enrichment Claim.**

Defendants first argue that FT Partners cannot succeed on its unjust enrichment claim because "'[t]he existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter.'" (Opp. at 19 (quoting *Clark-Fitzpatrick, Inc.* v. *Long Island R.R. Co.*, 70 N.Y.2d 382, 388 (1987) (alteration in original.))  For Defendants to establish that FT Partners has no possibility of recovery on the basis of this argument, they must establish by clear and convincing evidence that: (i) this rule unambiguously applies to non-signatories; and (ii) the SeedInvest Agreement conclusively governs in the specific situation at issue here. Defendants can do neither.

        ***1.    It is an open issue whether a contract can defeat an unjust enrichment claim against a non-signatory.*** Defendants cite (at 19-20) cases holding that, under New York law, a contract can preclude an unjust enrichment claim against a non-signatory.[2] But other courts in this District disagree. For example, Judge Furman noted that "some courts have held that 'the mere existence of a written contract governing the same subject matter does not preclude' recovery in quasi-contract 'from non parties so long as the other requirements for quasi contracts are met.'" *Lee* v. *Kylin Mgmt. LLC*, 2019 WL 917097, at *2 (S.D.N.Y. Feb. 25, 2019) (quoting *Seiden Associates, Inc.* v. *ANC Holdings, Inc.*, 754 F. Supp. 37, 40 (S.D.N.Y. 1991)). While acknowledging that "the case law in recent years has largely 'tacked' away from the view adopted

---

[2] While FT Partners asserts for purposes of its contract claim that the Circle Subsidiaries are bound by the SeedInvest Agreement, New York law permits pleading alternative theories of recovery. *See Chase* v. *Am. Stock Exch. L.L.C.*, 2003 WL 23281592, at *1 (S.D.N.Y. Mar. 14, 2003). Here, there is a dispute over whether the Circle Subsidiaries are parties to the Agreement.

by Judge Mukasey in *Seiden*," Judge Furman concluded that Judge Mukasey's "view is in fact the correct one," and "is more consistent with" both: (i) "precedent from the New York Court of Appeals, which recognized an unjust enrichment claim brought against a third party despite a related contract in [1970], and has not closed the door on such claims since"; and (ii) "'the logic of the equitable doctrine of quantum meruit.'" *Id.* Although acknowledging that certain "Appellate Division decisions" disagreed, he criticized those decisions as being "of dubious lineage," and having only "suspect" "foundation in Court of Appeals precedent." *Id.* at *3 & n.1.

Two courts endorsed Judge Furman's reasoning in a pair of relatively recent decisions. *See TransPerfect Glob., Inc.* v. *Lionbridge Techs., Inc.*, 2020 WL 1322872, at *9 (S.D.N.Y. Mar. 20, 2020) (Cote, J.); *Matthews* v. *Symbion Power LLC*, 69 Misc. 3d 269, 273 (N.Y. Sup. Ct. 2020). Similarly, the First Department recently allowed an unjust enrichment claim to go forward against non-signatories. *Manhattan Chrystie St. Dev. Fund, LLC* v. *215 Chrystie Inv'rs LLC*, 227 A.D.3d 621, 622 (1st Dep't 2024). In doing so, it noted that its prior decisions—which had dismissed unjust enrichment claims against non-signatories—"do not reflect a categorical rule to the contrary." Thus, at a minimum, there is substantial uncertainty as to whether New York law bars an unjust enrichment claim against a non-signatory. In evaluating an assertion of fraudulent joinder, "all factual and legal ambiguities" must be "resolved in favor of plaintiff." *Briarpatch Ltd.*, 373 F.3d at 302. As a result, for purposes of this claim, the Court must assume that if Circle Subsidiaries are not parties to the SeedInvest Agreement, then FT Partners therefore has viable unjust enrichment claims against them even if the SeedInvest Agreement covers the subject matter of the dispute. *See also Battaglia* v. *Shore Parkway Owner LLC*, 249 F. Supp. 3d 668, 671 (E.D.N.Y. 2017) ("[a]ll uncertainties in applicable state law are resolved in favor of the plaintiff").

  **2.**   ***Because Defendants contend Circle validly terminated the SeedInvest***

***Agreement, it does not "clearly cover" the subject matter of FT Partners' unjust enrichment claim at this time.***  At the pleading stage, "'quasi-contract claims'" will only be dismissed as duplicative of contract claims if "'the contract at issue clearly covers the dispute between the parties.'"  *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 962 F. Supp. 2d 606, 630 (S.D.N.Y. 2013).  Even if this rule applies to non-signatories, Defendants' argument fails because no court has yet adjudicated the parties' dispute over whether the SeedInvest Agreement was properly terminated and thus covers the subject matter of the dispute.  While the Agreement speaks to fees owed based on Transactions entered into while the Agreement is in effect, it would not clearly cover the situation that Defendants posit here, namely any fees owed for a Transaction that occurs *after* a purportedly valid termination and any tail period.

Because Defendants dispute whether the Agreement covers the fee owed, FT Partners was "not . . . required to elect [its] remedies and may proceed on both quasi contract and breach of contract theories."  *M/A-Com, Inc.* v. *State*, 78 A.D.3d 1293, 1294 (3d Dep't 2010); *see also P&G Auditors & Consultants, LLC* v. *Mega Int'l Commercial Bank Co., Ltd.*, 2019 WL 4805862, at *6 (S.D.N.Y. Sept. 30, 2019).

    **B.**    **FT Partners Has at Least a Possibility of Showing That the Services Performed Were for the Circle Subsidiaries as Well as for Circle.**

Defendants argue that where "'services were performed at the behest of someone other than the defendant, the plaintiff must look to that person for recovery.'" (Opp. at 22 (quoting *Kagan* v. *K-Tel Ent., Inc.*, 172 A.D.2d 375, 376 (1st Dep't 1991)).)  This argument fails.

*First*, the full rule makes clear that FT Partners' allegations are sufficient.  *Kagan*'s preceding sentence states that "to recover under a theory of quasi contract, a plaintiff must demonstrate that services were performed *for the defendant* resulting in its unjust enrichment."  *Kagan*, 172 A.D.2d at 376.  Here, the SeedInvest Agreement makes clear that FT Partners was

performing services for *both* Circle and SeedInvest.  *See supra* at 4-5.  And the Complaint repeatedly references FT Partners' work "for SeedInvest."  (*E.g.*, Compl. ¶¶ 263, 274, 283.)

*Second*, even if the Circle Subsidiaries *also* had to request the work that FT Partners did for them, there is at least some "possibility" that, after resolving "all factual and legal ambiguities" "in favor of plaintiff," a New York court would conclude that FT Partners sufficiently alleged that the Circle Subsidiaries did request such work.  *Briarpatch Ltd.*, 373 F.3d at 302.  It takes only the slightest inference to conclude that doing so would have required FT Partners to work closely with, and respond to requests from, the Circle Subsidiaries.

*Third*, *Kagan*'s rule applies only to *quantum meruit* theories of recovery and not unjust enrichment generally.  This is made clear by a case distinguishing *Kagan*.  *See Monex Fin. Servs., Ltd.* v. *Dynamic Currency Conversion, Inc.*, 62 A.D.3d 675, 676 (2d Dep't 2009) ("Moreover, the complaint sufficiently pleaded a cause of action sounding in unjust enrichment. The latter cause of action did not plead a quantum meruit theory; therefore, the plaintiffs were not required to plead that they performed services for the defendants ( . . . *cf. Kagan*)" (citation omitted)).  And any uncertainty on this point must be resolved in FT Partners' favor.  *Briarpatch Ltd.*, 373 F.3d at 302.  Thus, even if FT Partners were unable to recover damages on a *quantum meruit* basis (*i.e.*, based on the reasonable market price of the labor and materials supplied), it could still recover damages based on the amount the Circle Subsidiaries were unjustly enriched.

## CONCLUSION

Because no Defendant has been fraudulently joined, there is no complete diversity. This Court therefore lacks subject-matter jurisdiction and the action must be remanded.

-10-

Dated: New York, New York
September 19, 2024

                                          */s/ Matthew A. Schwartz*
Matthew A. Schwartz
Benjamin R. Walker
Christopher M. Weldon
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
(212) 558-4000
schwartzmatthew@sullcrom.com
walkerb@sullcrom.com
weldonc@sullcrom.com

*Attorneys for Plaintiffs Financial Technology Partners L.P. and FTP Securities LLC*