USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: _11/18/2024_

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

FINANCIAL TECHNOLOGY PARTNERS LP, et al.

                        Plaintiffs,

              - against -

CIRCLE INTERNET FINANCIAL LIMITED, et al.

                        Defendants,

---

**24 Civ. 4717 (VM)**

**DECISION AND ORDER**

**VICTOR MARRERO, United States District Judge.**

Plaintiffs Financial Technology Partners LP ("FTP") and FTP Securities LLC (together, "FT Partners" or "Plaintiffs") originally brought this action in New York State Supreme Court, New York County (the "State Court"), against defendants Circle Internet Financial Limited ("Circle") and its subsidiaries Pluto Holdings, Inc., SeedInvest Technology LLC, SI Securities LLC, and SI Advisors I, LLC (the "Subsidiaries" or "SeedInvest") (collectively, "Defendants"). Defendants removed this action to the Southern District of New York on the basis of diversity jurisdiction. In response, Plaintiffs moved to remand to the State Court, arguing that there was no diversity between Plaintiffs and the defendant Subsidiaries.

For the reasons discussed below, Plaintiffs' motion to remand is DENIED.

## I.    <u>BACKGROUND</u>

On  May  28,  2024,  Plaintiffs  commenced  this  action against  Defendants  in  State  Court,  alleging,  among  other claims,  that  Circle  and  its  Subsidiaries  breached  the SeedInvest  Agreement  (the  "Agreement").  (<u>See</u>  Dkt.  No.  10, Complaint  ("Compl.").)  On  June  20,  2024,  Defendants  removed the  action  to  the  Southern  District  of  New  York  on  the  basis of  diversity  jurisdiction  under  28  U.S.C.  §§  1332(a), 1441(a),  and  1441(b).  (<u>See</u>  Dkt.  No.  1.)  Plaintiffs  then  filed corporate  disclosure  statements,  which  revealed  that Plaintiffs  and  the  Subsidiaries  were  not  diverse  parties.[1] (<u>See</u>  Dkt.  Nos.  36,  37.)

On  August  8,  2024,  Plaintiffs  filed  their  Motion  to Remand,  arguing  that  this  action  should  be  remanded  to  the State  Court  because  the  Subsidiaries  ruin  diversity jurisdiction.  (<u>See</u>  Dkt.  No.  42-1,  Plaintiffs'  Memorandum  of Law  in  Support  of  Motion  to  Remand  to  State  Court  ("Pls.' Mem.").)  In  response,  Circle  argues  that  its  Subsidiaries  are fraudulently  joined  because  they  have  no  real  connection  with the  controversy  and  thus  should  not  be  considered  for  the

---

[1] The parties do not dispute that Plaintiffs and the Subsidiaries are not diverse. FTP and FTP Securities are both citizens of California, Delaware, and Florida. (<u>See</u> Dkt. Nos. 36, 37.) Pluto Holdings, Inc., SI Securities LLC, and SI Advisors I, LLC are citizens of Massachusetts and Delaware. (<u>See</u> Dkt. No. 1, ¶¶ 15-17.) SeedInvest Technology is a citizen of California and Delaware. (<u>See</u> <u>id.</u> ¶ 18.)

purposes of determining diversity jurisdiction. (See Dkt. No.
55, Defendants' Opposition to Plaintiffs' Motion to Remand
("Defs.' Opp'n").) Without the Subsidiaries, Plaintiffs and
Circle are diverse parties.[2]

A.    THE SEEDINVEST AGREEMENT

     In September 2020, Circle and FT Partners entered into
the SeedInvest Agreement. (See Dkt. No. 10, Exhibit B,
SeedInvest Agreement ("Agreement").) Under the Agreement, FT
Partners would advise Circle on selling or raising capital
for its SeedInvest subsidiaries. (See Compl. ¶ 105.) Circle
and FT Partners were the only signatories to the Agreement.
(See Agreement at 7.) The Agreement mirrored an earlier
contract between Circle and FT Partners from July 2020, for
which FT Partners was advising Circle on either selling or
raising capital on behalf of itself. (See Compl. ¶¶ 17, 73,
105.) According to Plaintiffs, these nearly identical
contracts confirmed that Circle was pleased with the terms in
the July 2020 contract. (See id. ¶ 105.)

     The SeedInvest Agreement's obligations were between
Circle,[3] FT Partners, and each of their respective successors
and assigns. (See Compl. ¶ 108; Agreement § 10.) Under the

_____

[2] Circle is a citizen of Ireland. (See Dkt. No. 1, ¶ 14.)

[3] The Agreement referred to Circle as "the Company." (See Compl. ¶ 107.)

Agreement, Circle was required to pay a quarterly retainer of $25,000 for FT Partners' advisory services, along with transaction fees for any completed sale or capital raised for SeedInvest. (See Agreement § 2.) The Agreement provided that Circle was not bound by a proposed transaction and had discretion to reject an offer for any reason. (See id. § 2(f).) However, if a transaction was completed and Circle or an acquirer failed to timely pay the required transaction fees, the unpaid fees would acquire interest of two percent per month, or the highest rate permissible by law, unless Circle contested the fees in good faith. (Compl. ¶ 298.) The Agreement's termination clause stated that Circle could terminate the Agreement if its Board of Directors made a good faith determination that FT Partners met one of the termination criteria outlined in the Agreement. (See Agreement § 6.) The Agreement did not assign any contractual obligations to the Subsidiaries. (See id. at 1-10.)

After executing the SeedInvest Agreement, Circle asked FT Partners to find a potential buyer for SeedInvest. (See Compl. ¶ 148.) FT Partners secured several prospective buyers, and one buyer ultimately made an offer to acquire SeedInvest. (Id. ¶ 150.) But in March 2021, Circle's Board rejected the offer and retained the SeedInvest business. (Id. ¶ 151.) By August 2022, the relationship between Circle and

FT Partners had soured and Circle sent a letter terminating the SeedInvest Agreement. (See id. ¶ 262.) SeedInvest was subsequently acquired in October 2022. (See id. ¶¶ 282-83.) Based on the SeedInvest acquisition, FT Partners sent Circle invoices in November 2022 and November 2023, reminding Circle of its obligations to pay the corresponding transaction fees. (See id. ¶¶ 287, 295-96.) However, Circle refused to pay these invoices on the grounds that it had previously terminated the Agreement. (See id.)

FT Partners now alleges that Circle and its Subsidiaries wrongfully terminated the SeedInvest Agreement and failed to pay FT Partners various fees required under the contract.

## II.  DISCUSSION

### A.  STANDARD OF REVIEW

Under 28 U.S.C. § 1441(a), a defendant may remove a case from a state court to federal court if the district court has original jurisdiction over the action. District courts have diversity jurisdiction "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." Brown v. Eli Lilly & Co., 654 F.3d 347, 356 (2d Cir. 2011) (quoting 28 U.S.C. § 1332(a)). The removing defendant has the burden of establishing that removal is proper. See Cal. Pub.

Emps.' Ret. Sys. v. WorldCom, Inc., 368 F.3d 86, 100 (2d Cir. 2004). However, a district court must remand the action if it determines that it lacks subject matter jurisdiction. See ICON MW, LLC v. Hofmeister, 950 F. Supp. 2d 544, 545 (S.D.N.Y. 2013) (citing 28 U.S.C. § 1447(c)); see also In re Methyl Tertiary Butyl Ether Prods. Liab. Litig., 488 F.3d 112, 125 (2d Cir. 2007) ("[W]e have held that out of respect for the limited jurisdiction of the federal courts and the rights of states, we must resolv[e] any doubts against removability.") (citation omitted).

Here, subject matter jurisdiction is based exclusively on diversity of the parties. Diversity is present when an action is between "citizens of different States." 28 U.S.C. § 1332(a)(1). Diversity is lacking where any party to the action is a citizen of the same state as an opposing party. See Wis. Dep't of Corr. v. Schacht, 524 U.S. 381, 388 (1998). Nevertheless, a district court may find that jurisdiction in federal court is proper if a party is fraudulently joined. See Whitaker v. Am. Telecasting, Inc., 261 F.3d 196, 206-07 (2d Cir. 2001).

B.    FRAUDULENT JOINDER

Defendants argue that there is complete diversity because the Subsidiaries have no real connection with the controversy and thus were fraudulently joined to this action.

6

Fraudulent joinder is a "legal term of art [used] to refer to the joinder of unnecessary or nominal parties in order to defeat federal jurisdiction." Kuperstein v. Hoffman-Laroche, Inc., 457 F. Supp. 2d 467, 470 (S.D.N.Y. 2006) (citation omitted). The term may apply where "there has been outright fraud committed in the plaintiff's pleadings," or where the non-diverse defendant has "no real connection with the controversy." Pampillonia v. R.J.R. Nabisco Inc., 138 F.3d 459, 460-61 (2d Cir. 1998). "Where joinder of a defendant is fraudulent, the Court may dismiss the defendant from the action," and assert jurisdiction over the remaining parties. Whitaker v. Fresno Telsat Inc., et al., No. 99 Civ. 6059, 1999 WL 767432, at *3 (S.D.N.Y. Sept. 28, 1999).

To establish fraudulent joinder, the defendant must show by "clear and convincing evidence" that "there is no possibility, based on the pleadings, that a plaintiff can state a cause of action against the non-diverse defendant in state court." Pampillonia, 138 F.3d at 461. The defendant "bears a heavy burden of proving fraudulent joiner, and all factual and legal issues must be resolved in favor of the plaintiff." Id. The question is "whether there is arguably a reasonable basis for predicting that state law might impose liability on the facts involved." Fed. Ins. Co. v. Tyco Int'l Ltd., 422 F. Supp. 2d 357, 378 (S.D.N.Y. 2006) (quoting 16

James Wm. Moore, et al., Moore's Federal Practice §
107.14(2)(c)(iv)(C) (3d ed. 2003)).

To determine whether a party has been fraudulently
joined, district courts must look to the pleadings at the
time of removal. See Segal v. Firtash, No. 13-CV-7818, 2014
WL 4470426, at *4 (S.D.N.Y. Sept. 9, 2014). Post-removal
filings cannot be considered to the extent "that they present
new causes of action or theories not raised in the controlling
petition filed in state court." Id. (quoting MBIA Ins. Corp.
v. Royal Bank of Can., 706 F. Supp. 2d 380, 395 (S.D.N.Y.
2009)). However, district courts may consider documents
beyond the pleadings "to the extent that the factual
allegations [in those documents] ... clarify or amplify the
claims actually alleged [in the pleadings]." Id. Essentially,
courts may "look beyond the pleadings to determine *if the
pleadings* can state a cause of action." Id. (emphasis
original).

Here, the pleading standard and substantive law of New
York apply to the fraudulent joinder analysis. See Brice v.
Costco Wholesale Corp., No. 23-CV-7857, 2024 WL 2783895, at
*4 (S.D.N.Y. May 28, 2024). "It is well established that the
New York pleading standard is more forgiving than the federal
standard." Segal, 2014 WL 4470426, at *4. To state a claim
under New York law, the complaint must plead facts with

sufficient particularity "to give the court and parties notice of the transactions, occurrences, or series of transactions or occurrences, intended to be proved and the material elements of each cause of action or defense." N.Y. C.P.L.R. § 3013. However, conclusory allegations consisting of bare legal conclusions with no factual specificity are insufficient, even under New York's liberal pleading standard. See Segal, 2014 WL 4470426, at *5; see also Shanahan v. Kolmar Lab'ys, Inc., No. 18-CV-8317, 2019 WL 935164, at *1 (S.D.N.Y. Feb. 26, 2019) (quoting Siegel, N.Y. Prac. § 208 (6th ed. 2018)) ("[T]he New York pleading standard is satisfied if a complaint gives 'notice of the event out of which the grievance arises' and 'cover[s] the substantive material elements that make up the particular cause of action relied on.'").

   C.   FT PARTNERS' CLAIMS

   Plaintiffs bring three claims under New York law against Defendants regarding the SeedInvest Agreement: (1) breach of contract, (2) breach of the implied covenant of good faith and fair dealing, and (3) unjust enrichment. For the reasons explained below, even construing all factual and legal issues in favor of Plaintiffs, Circle has shown that Plaintiffs cannot recover on their claims against the Subsidiary defendants in state court.

1.  *BREACH OF CONTRACT*

Plaintiffs fail to plead any facts showing that the Subsidiaries, as non-signatories of the Agreement, can be held liable for breach of contract. "To state a claim for breach of contract under New York law, a plaintiff must plead the following elements: (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." Piuggi v. Good for You Prods. LLC, No. 23 CIV. 3665, 2024 WL 3274638, at *13 (S.D.N.Y. July 2, 2024) (citation omitted). However, "a party who is not a signatory to a contract generally cannot be held liable for breaches of that contract." Powerbox (USA), Inc. v. Honeywell Int'l, Inc., No. 20 CIV. 3638, 2020 WL 6151491, at *3 (S.D.N.Y. Oct. 20, 2020) (citation omitted). This non-signatory rule applies to a parent corporation and its subsidiaries, which are "regarded as legally distinct entities," such that "a contract under the corporate name of one is not treated as that of both." Carte Blanche (Singapore) Pte., Ltd. v. Diners Club Int'l, Inc., 2 F.3d 24, 26 (2d Cir. 1993).

Nonetheless, a non-signatory may be held liable for breach of contract when there are factual allegations that the non-signatory was involved in the events related to the breach. See Pampillonia, 138 F.3d at 461-62; see also Allied

Programs Corp. v. Puritan Ins. Co., 592 F. Supp. 1274, 1276-
77 (S.D.N.Y. 1984). A non-signatory may be liable for breach
of contract when (1) the non-signatory manifests an intent to
be bound by the contract, (2) actions show that the non-
signatory is in privity of contract or assumed obligations
under the contract, or (3) the non-signatory is the alter ego
of the signatory. See M.S.S. Const. Corp. v. Century Sur.
Co., No. 15 CIV. 2801, 2015 WL 6516861, at *9 (S.D.N.Y. Oct.
28, 2015). Here, Plaintiffs' allegations fall short of New
York's liberal pleading standard because there are no
specific facts linking the non-signatory Subsidiaries to the
formation, execution, or breach of the SeedInvest Agreement
as required by New York law. See Segal, 2014 WL 4470426, at
*4-5; Allied Programs Corp., 592 F. Supp. at 1276-77.

At the outset, the Subsidiaries are minimally referenced
in the fact section of the Complaint, (see Compl. ¶¶ 109,
282-84), and none of those allegations suggest that the
Subsidiaries involved in the events related to the breach.
See Segal, 2014 WL 4470426, at *4-5 (holding plaintiff's
breach of contract claim under New York law failed, and thus
defendant was fraudulently joined, because there were no
allegations that the defendant was a party to the agreement,
that the defendant was involved with the loans at issue, or
that any contractual obligations flowed to or from the

defendant); see also Belen v. Herman, No. 22 CIV. 6455, 2024
WL 182588, at *6 (S.D.N.Y. Jan. 17, 2024) (holding defendant
was fraudulently joined because the complaint did not point
to any wrongdoing by the defendant and did not assert a
vicarious liability or veil-piercing claim sufficient under
New York law).

Rather, the Complaint's allegations regarding the
Subsidiaries are vague and conclusory or misstate the
Agreement. For example, the Complaint alleges that
"Defendants . . . directly benefited from FT Partners' work
for SeedInvest" because SeedInvest was acquired in October
2022. (See Compl. ¶ 283.) However, a passing reference to
"Defendants" as a collective, without more, fails to meet the
New York pleading standard. See Segal, 2014 WL 4470426, at
*5; Naber v. First Am. Title Ins. Agency, Inc., No. 22-CV-
6166-CJS-MJP, 2022 WL 16832644, at *5 (W.D.N.Y. Nov. 9, 2022).
Nor does this allegation support the existence of a contract
between FT Partners and the Subsidiaries or that the
Subsidiaries themselves breached the Agreement. Moreover, the
Complaint alleges that under the Agreement, "Defendants
agreed to pay FT Partners" quarterly retainer fees of $25,000
as well as transaction fees and expenses. (Compl. ¶ 109.)
Beyond the general reference to "Defendants," which is
insufficient, the text of the Agreement clarifies that only

*Circle* agreed to pay FT Partners such fees. (<u>See</u> Agreement §§ 2(a)-(b)); <u>Naber</u>, 2022 WL 16832644, at *5 (dismissing defendant as fraudulently joined for breach of contract under New York law despite the complaint alleging that "Defendants" issued the insurance policy because the policy named only the co-defendant as the insurer).

Beyond these limited references to the Subsidiaries, the Complaint is also devoid of facts that suggest the Subsidiaries, as non-signatories, are liable for breach of contract because the Subsidiaries (1) manifested an intent to be bound, (2) assumed obligations under the contract or were in privity of contract, or (3) were Circle's alter ago.[4] <u>See</u> <u>M.S.S. Const. Corp.</u>, 2015 WL 6516861, at *9. As illustrated below, the Complaint's factual allegations surrounding the Agreement's formation, execution, and breach focus only on Circle and make no mention of the Subsidiaries.

First, Plaintiffs' allegations do not support or even suggest that the Subsidiaries manifested an unequivocal intent to be bound by the SeedInvest Agreement. "Courts have found that a non-signatory 'manifested an unequivocal intent to be bound' by a contract where the non-signatory . . .

---

[4] Although Plaintiffs do not specifically allege these breach of contract theories, they are not required to do so at this stage. <u>See</u> <u>MBIA Ins.</u> <u>Corp.</u>, 706 F. Supp. 2d at 399.

'participated in the negotiations and drafting' of the contract, or 'where it micro-managed performance under the [c]ontract.'" <u>Chemimage Corp. v. Johnson & Johnson</u>, No. 24-CV-2646, 2024 WL 3758814, at *3 (S.D.N.Y. Aug. 12, 2024) (quoting <u>Alaska Elec. Pension Fund v. Bank of Am. Corp.</u>, 306 F. Supp. 3d 610, 625 (S.D.N.Y. 2018)).

Here, Plaintiffs do not plead any facts to support a finding that the Subsidiaries participated in the SeedInvest contract negotiations. Rather, Plaintiffs allege that it was Circle that entered the SeedInvest Agreement for FT Partners to advise Circle on a potential company sale or to raise capital for Circle's subsidiaries SeedInvest. (<u>See</u> Compl. ¶ 105.) Plaintiffs also allege that the terms of the July 2020 contract were carried over to the SeedInvest Agreement because Circle was content with the terms of the earlier agreement. (<u>See</u> <u>id.</u>) Although the Complaint describes both contracts' fee provisions as "heavily negotiated," there is no indication that the Subsidiaries were involved in such negotiations. (<u>Id.</u> ¶ 110.)

Further, Plaintiffs fail to link the Subsidiaries to managing performance under the Agreement because the Complaint points to Circle only as managing performance. <u>See</u> <u>Chemimage Corp.</u>, 2024 WL 3758814, at *3. As alleged in the Complaint, once FT Partners secured a prospective buyer for

SeedInvest, Circle's Board of Directors rejected that offer and maintained ownership of the SeedInvest business. (Compl. ¶¶ 150-51.) In terms of fees, Plaintiffs' allegations suggest that FT Partners held only Circle responsible for paying outstanding invoices. For example, Plaintiffs allege that Circle stopped paying the quarterly retainer in violation of the Agreement. (Id. ¶ 281.) And based on the SeedInvest acquisition in October 2022, FT Partners sent Circle invoices in November 2022 and November 2023, reminding Circle of its obligations to pay the corresponding transaction fees. (See id. ¶¶ 287, 295-97.) Plaintiffs allege that Circle refused to pay these invoices on the grounds that it had previously terminated the Agreement. (See id.) Nothing in these allegations suggests culpable involvement by the Subsidiaries.

Regarding termination, the Agreement specified that Circle could terminate it based on a good faith determination by Circle's Board of Directors that FT Partners violated one of the Agreement's termination criteria. (See Agreement § 6.) The Complaint alleges that Circle and its Board Members terminated the Agreement, (see Compl. ¶¶ 262-64), because Circle had independently re-started its efforts to sell SeedInvest and wanted to avoid paying FT Partners a transaction fee under the Agreement. (See id. ¶ 36.) Even

with all reasonable inferences drawn in Plaintiffs' favor, the Complaint points only to Circle as managing performance under the Agreement.

Second, Plaintiffs have failed to allege facts showing privity of contract or that the Subsidiaries assumed obligations under the Agreement. See Impulse Mktg. Grp., Inc. v. Nat'l Small Bus. All., Inc., No. 05-CV-7776, 2007 WL 1701813, at *5-6 (S.D.N.Y. June 12, 2007). "Courts have found that privity exists where the non-signatory is in a joint venture with the parties, assisted in drafting the contract, . . . micro-managed performance under the [c]ontract, acknowledged that it was the actual party in interest, and paid for Plaintiff's services." VariBlend Dual Dispensing Sys. LLC v. Crystal Int'l (Grp.) Inc., No. 18 CIV. 10758, 2019 WL 4805771, at *19 (S.D.N.Y. Sept. 30, 2019) (citations omitted) (listing cases).

As previously established, Plaintiffs do not allege that the Subsidiaries micro-managed performance under the Agreement or that the Subsidiaries paid for FT Partners' services. Further, even though the SeedInvest Agreement was related to the sale or raise of capital for SeedInvest, (see Compl. ¶ 105), Plaintiffs' allegations do not suggest that SeedInvest was a joint venturer that "attended meetings with the venture partners, received information about the Project

16

. . . and participated in the negotiations and drafting of the . . . Agreement." ESI, Inc. v. Coastal Corp., 61 F. Supp. 2d 35, 73 (S.D.N.Y. 1999). Nor is there any indication that the Subsidiaries explicitly expressed that they were the "real party in interest" to the SeedInvest Agreement. See Mersen USA EP Corp. v. TDK Elecs. Inc., 594 F. Supp. 3d 570, 581 (S.D.N.Y. 2022).

Third, Plaintiffs do not allege sufficient facts showing that the Subsidiaries were Circle's alter ego. "[T]he alter ego test is a stringent one, requiring . . . that the non-signatory have no real identity independent of the signatory, not simply that the entities are closely related." Alaska Elec. Pension Fund, 306 F. Supp. 3d at 625 (citation omitted). Allegations establishing that entities have a close relationship, such as having "the same principal executive offices, sharing identical management teams, and having almost identical principals," are not enough to meet the pleading threshold to state an alter ego claim for breach of contract. Id. Absent allegations suggesting that the Subsidiaries were an alter ego of Circle, "Plaintiffs' allegations come nowhere near that threshold." Id. As Plaintiffs failed to plead facts showing that any of the exceptions for non-signatory liability apply, Plaintiffs

cannot state a breach of contract claim against the Subsidiaries.

   2.   *IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING*

   Plaintiffs' implied covenant of good faith and fair dealing claim fails because it is duplicative of the breach of contract claim concerning the SeedInvest Agreement. See Piuggi, 2024 WL 3274638, at *15. New York law "does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled." Harris v. Provident Life & Accident Ins. Co., 310 F.3d 73, 81 (2d Cir. 2002). Here, both claims are based on the same factual allegations: that Defendants violated the SeedInvest Agreement by terminating the Agreement, which was not done in good faith, and that Defendants have not paid the transaction fees for the SeedInvest acquisition. (See Compl. ¶¶ 319, 328, 332.) Given these duplicative allegations, Plaintiffs failed to state a claim for breach of the covenant of good faith under New York law.

   3.   *UNJUST ENRICHMENT*

   Finally, Plaintiffs' unjust enrichment claim fails because Plaintiffs merely allege that the Subsidiaries

financially benefited from the advisory services performed at
Circle's request. "To state a claim for unjust enrichment
under New York law, a plaintiff must plead that (1) the other
party was enriched, (2) at [the plaintiff's] expense, and (3)
that it is against equity and good conscience to permit the
other party to retain what is sought to be recovered." Piuggi,
2024 WL 3274638, at *15 (citation omitted). "Even in the
absence of a preclusive contract, 'a plaintiff must
demonstrate that services were performed for the defendant
resulting in its unjust enrichment. It is not enough that the
defendant received a benefit from the activities of the
plaintiff.'" Fernbach, LLC v. Cap. & Guarantee Inc., No.
08CIV1265, 2009 WL 2474691, at *3 (S.D.N.Y. Aug. 12, 2009)
(quoting Kagan v. K-Tel Entm't, 568 N.Y.S.2d 756 (1st Dep't
1991)). Ultimately, "if services were performed at the behest
of someone other than the defendant, the plaintiff must look
to that person for recovery." Id.

Here, Plaintiffs' unjust enrichment claim fails because
Circle, not the Subsidiaries, requested Plaintiffs' advisory
services. See Rowe Plastic Surgery of N.J., L.L.C. v. Aetna
Life Ins. Co., No. 23-8083, 2024 WL 4315128, at *4 (2d Cir.
Sept. 27, 2024). As alleged in the Complaint, Circle asked FT
Partners to find a potential buyer for SeedInvest. (See Compl.
¶ 148.) FT Partners secured a buyer, but Circle's Board of

Directors ultimately rejected that offer and retained the SeedInvest business. (See id. ¶¶ 149-51.) Plaintiffs now allege that both Circle and the Subsidiaries were unjustly enriched by their advisory services to secure a buyer for SeedInvest, which remain unpaid. (See id. ¶¶ 342-46.)

But "Plaintiffs' allegations do not show how [the Subsidiaries] benefitted from their services." Rowe Plastic Surgery, 2024 WL 4315128, at *3. "[Plaintiffs'] rely solely on allegations of an abstract and attenuated indirect benefit [the Subsidiaries] received. This is insufficient." Id. Accordingly, there is no possibility that Plaintiffs can state an unjust enrichment claim against the Subsidiaries.

### III. ORDER

For the foregoing reasons, it is hereby

**ORDERED** that the motion (Dkt. No. 42) of plaintiffs Financial Technology Partners LP and FTP Securities LLC to remand this action to the Supreme Court of the State of New York, New York County, is **DENIED**; and it is further

**ORDERED** that Defendants Pluto Holdings, Inc., SeedInvest Technology LLC, SI Securities LLC, and SI Advisors I, LLC are dismissed from this action. The Clerk of Court is respectfully directed to terminate any pending motions.

**SO ORDERED.**

Dated:     18 November 2024
           New York, New York

                                        Victor Marrero
                                        U.S.D.J.