UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/24/2025
```

FINANCIAL TECHNOLOGY PARTNERS LP, et al.

                    Plaintiffs,

        - against -

CIRCLE INTERNET FINANCIAL LIMITED,

                    Defendant.

**24 Civ. 4717 (VM)**

<u>**DECISION AND ORDER**</u>

**VICTOR MARRERO, United States District Judge.**

Plaintiffs Financial Technology Partners LP and FTP Securities LLC (together, "FT Partners") brought this action against defendant Circle Internet Financial Limited[1] ("Circle") alleging Circle wrongfully terminated two advisory agreements (the "Agreements") between the parties and failed to pay FT Partners various fees as required under those Agreements. (See "Amend. Compl.," Dkt. No. 40.) Circle now moves to partially dismiss the Amended Complaint, arguing that FT Partners' claims for declaratory judgment, breach of the implied covenant of good faith and fair dealing, and unjust enrichment are precluded by the breach of contract claims and warrant dismissal. (See "Def.'s Mot.," Dkt. No.

---

[1] FT Partners also named Circle's subsidiaries Pluto Holdings, Inc., SeedInvest Technology LLC, SI Securities LLC, and SI Advisors I, LLC (the "Subsidiaries") as defendants in this matter. (See Dkt. Nos. 1, 40.) The Court dismissed the Subsidiaries from this action on the basis of fraudulent joinder on November 18, 2024. See Fin. Tech. Partners LP v. Circle Internet Fin. Ltd., No. 24 Civ. 4717, 2024 WL 4817473, at *7 (S.D.N.Y. Nov. 18, 2024).

72.) For the reasons discussed below, Circle's motion to partially dismiss the Amended Complaint is **GRANTED**.

## I.    BACKGROUND

### A.    FACTUAL BACKGROUND

#### 1.    The Agreements

FT Partners comprise an investment bank that specializes in advising financial technology companies. (See Amend. Compl. ¶ 3.) Circle, a financial technology company, engaged FT Partners as its financial advisor in two separate contracts: the Circle Agreement, entered into in May 2020, and the SeedInvest Agreement, entered into in July 2020. (See id. ¶¶ 2, 75, 110.) Under the Circle Agreement, FT Partners would advise Circle on selling or raising capital on behalf of itself. (See id. ¶ 75; "Circle Agreement," Dkt. No. 40-2.) The SeedInvest Agreement expanded FT Partners' advisory role to advise Circle on selling or raising capital on behalf of its Subsidiaries. (See Amend. Compl. ¶ 110; "SeedInvest Agreement," Dkt. No. 40-3.)

The Agreements had similar terms. (See Amend. Compl. ¶¶ 110-24.) Under each, Circle was required to pay a quarterly retainer for FT Partners' advisory services, along with percentage-based transaction fees for any completed sale or capital raised. (See Circle Agreement § 2(a)-(b); SeedInvest

Agreement § 2(a)-(b).) If Circle completed an alternative transaction that was not a company sale or a capital raise, the parties would negotiate FT Partners' compensation in good faith. (See Circle Agreement § 2(d); SeedInvest Agreement § 2(d).) Any retainer payments, to the extent paid, would be applied against any transaction fee. (See Circle Agreement § 2(a); SeedInvest Agreement § 2(a).) Circle was not bound by a proposed transaction and had discretion to reject an offer for any reason. (See Circle Agreement § 2(f); SeedInvest Agreement § 2(f).) However, if a transaction was completed and Circle or an acquirer failed to timely pay the required transaction fees, the unpaid fees would acquire interest at the specified rate unless Circle contested the fees in good faith. (See Circle Agreement § 2(e); SeedInvest Agreement § 2(e).)

The Agreements also had the same termination clause. It would remain in effect until a company sale was consummated or Circle terminated the contract early for-cause, whichever occurred first. (See Amend. Compl. ¶ 78(e)-(g).) However, the Agreement would not automatically terminate upon completion of a capital raise. (See Circle Agreement § 6; SeedInvest Agreement § 6.) To authorize early termination, Circle's Board of Directors was required to make a good faith determination that FT Partners met one of the following

termination criteria (each constituting a "Good Reason"): (a) FT Partners materially breached its obligations under the Agreement, which caused or was likely to cause material harm to Circle, (b) FT Partners had a conflict of interest that was materially detrimental to Circle and Circle did not waive the conflict, or (c) neither Steven McLaughlin ("McLaughlin") nor Randall Little ("Little")[2] served as lead or co-lead advisors on behalf of FT Partners in any prospective transaction. (See Circle Agreement § 6; SeedInvest Agreement § 6.) Termination was effective only if Circle then notified FT Partners of the Good Reason and Circle's Board of Directors made a good faith determination that FT Partners failed to cure the Good Reason, to the extent curable, within thirty days. (See Circle Agreement § 6; SeedInvest Agreement § 6.)

The termination clause included a provision that the Agreement's fee provision, among others, would survive any termination of the Agreement. (See Circle Agreement § 6; SeedInvest Agreement § 6.) Moreover, FT Partners were entitled to any applicable transaction fee if, within twelve months of a valid termination, Circle consummated or entered into any agreement that subsequently resulted in a

---

[2] McLaughlin is the founder and CEO of FT Partners. (See Amend. Compl. ¶ 3.) Little was the managing director of FT Partners until his departure in May 2023. (See id. ¶¶ 152, 247.)

transaction (the "Tail Period"). (<u>See</u> Circle Agreement § 6; SeedInvest Agreement § 6.)

            2.    Termination of the Agreements

By April 2022, the relationship between Circle and FT Partners had soured and Circle terminated the Circle Agreement. (<u>See</u> Amend. Compl. ¶ 230.) The termination letter stated that Circle's Board of Directors had determined in good faith that (a) FT Partners materially breached its obligations to Circle, which caused or was likely to cause material harm to Circle, (b) FT Partners had conflicts of interest materially detrimental to Circle, which had not been waived by Circle, and (c) neither Steven McLaughlin nor Randall Little were the lead or co-lead advisors for FT Partners in any prospective transaction. (<u>See</u> <u>id.</u>) Circle's Board of Directors further determined that none of these Good Reasons had been or could be cured. (<u>See</u> <u>id.</u>) In August 2022, Circle terminated the SeedInvest Agreement on the same grounds stated in the Circle Agreement termination letter. (<u>See</u> <u>id.</u> ¶ 267.)

Following the termination of the Circle Agreement, Circle announced a $401 million capital raise with four investors, which closed in May 2022 (the "May 2022 Capital Raise"). (<u>See</u> <u>id.</u> ¶¶ 256-57.) In October 2022, Circle and several of its Subsidiaries entered into an asset purchase

agreement with third-party purchasers and the relevant Subsidiaries were acquired in May 2023 (the "SeedInvest Acquisition"). (See id. ¶ 287.) In August 2023, Circle entered into a share transfer agreement (the "August 2023 Capital Raise") with a third-party, in which Circle sold a percentage of its fully diluted equity valued at $51.1 million. (See id. ¶ 305.)

Based on the May 2022 Capital Raise, the SeedInvest Acquisition, and the August 2023 Capital Raise, FT Partners sent Circle several invoices requesting payment for the corresponding transaction fees. (See id. ¶¶ 43, 261, 292, 301.) Pursuant to the Circle Agreement, FT Partners sought $28.07 million in fees in connection to the May 2022 Capital Raise and $3.577 million in fees in connection to the August 2023 Capital Raise. (See id. ¶¶ 34, 43.) Pursuant to the SeedInvest Agreement, FT Partners sent a preliminary invoice requesting the necessary information to enable calculation of the transaction fee in connection with the SeedInvest Acquisition. (See id. ¶ 292.) Circle refused to pay these invoices or to provide the requested information on the grounds that it had previously terminated the Agreements. (See id. ¶¶ 43, 262, 292, 301-02.)

B.    <u>THE PRESENT ACTION</u>

On May 28, 2024, FT Partners commenced this action against Circle and its Subsidiaries in New York State Supreme Court, New York County (the "State Court"). (<u>See</u> Dkt. No. 1.) Circle and its Subsidiaries subsequently removed the case to this Court on the basis of diversity jurisdiction under 28 U.S.C. §§ 1332(a), 1441(a), and 1441(b). (<u>See</u> <u>id.</u>) In response, FT Partners filed a motion to remand, arguing that this Court did not have jurisdiction because the Subsidiaries were not diverse parties. (<u>See</u> Dkt. No. 42.) Following briefing by the parties, the Court denied FT Partners' motion to remand, finding that FT Partners could not state claims for breach of contract, breach of the implied covenant of good faith and fair dealing, or unjust enrichment against the Subsidiaries and thus the Subsidiaries were fraudulently joined. <u>See</u> <u>Fin. Tech. Partners LP</u>, 2024 WL 4817473, at *3-7. As a result, the Court dismissed the Subsidiaries from this action. <u>Id.</u> at *7.

Following the dismissal of the Subsidiaries, FT Partners and Circle exchanged pre-motions letters in anticipation of Circle's motion to dismiss in accordance with this Court's Individual Practices. (<u>See</u> Dkt. No. 66.) Unable to resolve the dispute through pre-motion letters, Circle subsequently filed its motion to dismiss with an accompanying memorandum

of law, (see "Def.'s Mem.," Dkt. No. 72-1), to which FT Partners filed an opposition, (see "Pls.' Opp'n," Dkt. No. 73), and Circle filed a reply. (See "Def.'s Reply," Dkt. No. 74.)

## II.  <u>STANDARD OF REVIEW</u>

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). A claim is plausible if the complaint states "enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal' conduct" — there is not "a probability requirement at the pleading stage." <u>Lynch v. City of New York</u>, 952 F.3d 67, 75 (2d Cir. 2020) (quoting <u>Twombly</u>, 550 U.S. at 556); <u>see</u> <u>Iqbal</u>, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). "In other words, a complaint should not be dismissed when the factual allegations sufficiently 'raise a right to relief above the speculative level.'" <u>Liboy v. Russ</u>, No. 22 Civ. 10334, 2023 WL 6386889, at *4 (S.D.N.Y. Sept. 29, 2023) (quoting <u>Twombly</u>, 550 U.S. at 555).

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "constru[e] the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." Goldstein v. Pataki, 516 F.3d 50, 56 (2d Cir. 2008) (citation omitted). The Court may also "consider documents attached to the pleadings, documents referenced in the pleadings, or documents that are integral to the pleadings in order to determine if a complaint should survive a [Federal Rule of Civil Procedure] 12(b)(6) motion." Garcia v. Lewis, No. 05 Civ. 1153, 2005 WL 1423253, *3 (S.D.N.Y. June 16, 2005).

### III. DISCUSSION

FT Partners bring several claims under New York law alleging that Circle wrongfully terminated the Agreements and failed to pay FT Partners various fees as required under those contracts. Circle does not move to dismiss the breach of contract claims regarding the Circle Agreement (Count II) or the SeedInvest Agreement (Count III). Rather, Circle argues that FT Partners' remaining claims should be dismissed because they are duplicative of the breach of contract claims. (See Def.'s Mem.) FT Partners' remaining claims are as follows: (1) declaratory judgment regarding the Circle

Agreement (Count I),[3] (2) breach of the implied covenant of good faith and fair dealing regarding the Circle Agreement (Count IV) and the SeedInvest Agreement (Count V), and (3) unjust enrichment regarding the Circle Agreement (Count VI) and the SeedInvest Agreement (Count VII). For the reasons explained below, the Court finds that FT Partners' claims for declaratory relief, breach of the implied covenant, and unjust enrichment are precluded by the duplicative breach of contract claims and warrant dismissal.

   A.   <u>DECLARATORY RELIEF</u>

   FT Partners' declaratory judgment and breach of contract claims regarding the Circle Agreement both allege invalid termination of the Agreement because Circle (1) did not have a Good Reason for terminating the contract, (2) did not make a good faith determination that such a Good Reason existed, and (3) did not provide FT Partners timely notice or an opportunity to cure the Good Reason. (<u>See</u> Amend. Compl. ¶¶ 315, 319(a).) However, the claim for declaratory relief also seeks a declaration that the Circle Agreement has been and remains in full force and effect. (<u>See</u> id. ¶ 315.) The parties dispute whether this distinction is sufficient to sustain FT

---

[3] FT Partners do not seek a declaratory judgment regarding the SeedInvest Agreement.

Partners' claim for declaratory judgment. (<u>See</u> Def.'s Mem. at 9-14; Pls.' Opp'n at 10-17; Def.'s Reply at 1-9.)

"Declaratory relief is a prospective remedy intended to resolve or mitigate disputes that may yield later litigation." <u>EFG Bank AG, Cayman Branch v. AXA Equitable Life Ins. Co.</u>, 309 F. Supp. 3d 89, 99 (S.D.N.Y. 2018). However, "[c]ourts routinely dismiss requests for declaratory judgment when the parties' rights will be adjudicated through a breach of contract claim in the same action." <u>Talkdesk, Inc. v. Unique Travel Corp.</u>, No. 23 Civ. 9543, 2024 WL 4904684, at *5 (S.D.N.Y. Nov. 27, 2024) (citation omitted); <u>Piven v. Wolf Haldenstein Adler Freeman & Herz L.L.P.</u>, No. 08 Civ. 10578, 2010 WL 1257326, at *11 (S.D.N.Y. Mar. 12, 2010) ("[C]ourts have found declaratory judgment to be inappropriate where a party has already invoked its right to a coercive remedy," such as breach of contract).

The Declaratory Judgment Act, 28 U.S.C. § 2201, affords district courts "a broad grant of discretion" to "refuse to exercise jurisdiction over a declaratory action that they would otherwise be empowered to hear." <u>Dow Jones & Co. v. Harrods Ltd.</u>, 346 F.3d 357, 359 (2d Cir. 2003). Although not required, a district court may exercise jurisdiction over a declaratory action if the declaratory judgment will "serve a useful purpose in clarifying or settling the legal issues

involved," or "finalize the controversy and offer relief from uncertainty" rather than raise concerns of "judicial efficiency and judicial economy" or that the proposed remedy "is being used merely for procedural fencing or a race to res judicata" or would increase friction between separate legal systems. See Admiral Ins. Co. v. Niagara Transformer Corp., 57 F.4th 85, 99-100 (2d Cir. 2023) (citations and alterations omitted). A district court may also consider whether "there is a better or more effective remedy" than declaratory relief. Id. at 100 (citation omitted).

Taking account of these considerations, the Court declines to exercise jurisdiction over FT Partners' claim for declaratory relief. Here, a declaratory judgment will not clarify or settle the pertinent legal issues or finalize the controversy. Rather, whether Circle effectively terminated the Circle Agreement is an issue that will necessarily be decided in the resolution of the breach of contract claim. See Lim v. Radish Media Inc., No. 22-1610, 2023 WL 2440160, at *2 (2d Cir. Mar. 10, 2023); see also Talkdesk, Inc., 2024 WL 4904684, at *6 (claim for declaratory relief dismissed as duplicative of breach of contract claim where plaintiff sought declaration that defendant did not validly terminate the agreement and that the agreement was valid and enforceable); Honeywell Int'l Inc. v. Ecoer Inc., No. 24 Civ.

1464, 2024 WL 3521591, at *8 (S.D.N.Y. July 23, 2024) (dismissing claim for declaratory judgment because whether defendant effectively terminated the contract "would not clarify the parties' legal relations in any way that will not already be accomplished by resolving the [breach of contract] claims").

FT Partners' breach of contract claim, which allows for damages, also constitutes a more effective remedy than declaratory relief. See Talkdesk, Inc., 2024 WL 4904684, at *6 ("[G]iven the damages available through the breach of contract claim, there exists a better or more effective remedy at hand." (citation omitted)). Nonetheless, FT Partners insist that declaratory relief may provide a more effective remedy. To advance this argument, FT Partners maintain that Circle's refusal to stipulate that the Circle Agreement is in full force and effect shows that, should FT Partners succeed on the breach of contract claim, a declaratory judgment may provide additional relief. (See Pls.' Opp'n at 10-11.) FT Partners' conclusory speculation does not explain how the breach of contract claim embodies an inadequate alternative to the declaratory judgment claim. See Pers. Watercraft Prod. SARL v. Robinson, No. 16 Civ. 9771, 2017 WL 4329790, at *11 (S.D.N.Y. Sept. 1, 2017) (speculation that declaratory

judgment would provide additional relief beyond successful breach of contract claim was insufficient).

FT Partners also argue that declaratory relief is warranted because FT Partners consider the Circle Agreement to be in full force and effect and thus Circle may owe FT Partners fees for future transactions, in addition to damages for past conduct. (See Pls.' Opp'n at 11-12.) However, FT Partners' breach of contract claim includes an allegation that Circle committed an anticipatory breach of the Circle Agreement by refusing to pay all future transaction fees, rendering declaratory relief superfluous even for future conduct. (See Amend. Compl. ¶ 319(e).) See Fleisher v. Phoenix Life Ins. Co., 858 F. Supp. 2d 290, 302 (S.D.N.Y. 2012) (anticipatory breach of contract claim subsumed declaratory judgment claim regarding future conduct); see also Ambac Assurance Corp. v. U.S. Bank Nat'l Ass'n, No. 21-70, 2021 WL 6060710, at *5 (2d Cir. Dec. 20, 2021) (declaratory judgment claim regarding future distributions was duplicative of breach of contract claim). Moreover, to the extent that these future transactions are hypothetical, "under the Declaratory Judgment Act, a court may not adjudicate 'a difference or dispute of a hypothetical or abstract character' or 'one that is academic or moot.'" U.S. Bank Nat. Ass'n ex rel. Lima Acquisition LP v. PHL Variable Ins. Co., No. 12 Civ. 6811,

2014 WL 998358, at *10 (S.D.N.Y. Mar. 14, 2014) (quoting <u>Aetna</u>
<u>Life Ins. Co. of Hartford, Conn. v. Haworth</u>, 300 U.S. 227,
240 (1937)).

The considerations of judicial efficiency, judicial
economy, procedural fencing, and friction between separate
legal states are not implicated here, as there is no parallel
litigation pending in other jurisdictions. <u>See</u> <u>Admiral Ins.</u>
<u>Co.</u>, 57 F.4th at 99-100. Thus, for the reasons explained
above, the Court dismisses FT Partners' declaratory judgment
claim regarding the Circle Agreement (Count I).

B.    IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

The implied covenant of good faith and fair dealing,
implicit in every contract, is a promise that "neither party
to a contract shall do anything that has the effect of
destroying or injuring the right of the other party to receive
the fruits of the contract, or to violate the party's presumed
intentions or reasonable expectations." <u>JN Contemp. Art LLC</u>
<u>v. Phillips Auctioneers LLC</u>, 29 F.4th 118, 128 (2d Cir. 2022)
(citation omitted). "The implied covenant is breached when a
party acts in a manner that, although not expressly forbidden
by any contractual provision, would deprive the other party
of the right to receive the benefits under their agreement."
<u>Melville v. HOP Energy, LLC</u>, No. 21 Civ. 10406, 2023 WL
2648775, at *8 (S.D.N.Y. Mar. 27, 2023) (citation omitted).

However, New York law "does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled." Harris v. Provident Life & Accident Ins. Co., 310 F.3d 73, 81 (2d Cir. 2002); Kitchen Winners NY Inc. v. Rock Fintek LLC, 668 F. Supp. 3d 263, 288 (S.D.N.Y. 2023) ("Under New York law, claims are duplicative when both arise from the same facts and seek the identical damages for each alleged breach." (citation omitted)). Thus, to successfully plead both types of claims, "a plaintiff must thread the needle of alleging an implied duty that is consistent with the express contractual terms, but based on allegations that are distinct from the factual predicate for its contract claims." WCA Holdings III, LLC v. Panasonic Avionics Corp., 704 F. Supp. 3d 473, 499 (S.D.N.Y. 2023) (citation and alternations omitted).

FT Partners' claims for breach of contract and breach of the implied covenant regarding both Agreements are duplicative. Both sets of claims are based on the same factual allegations: that Circle improperly terminated the Agreements at issue, which was not done in good faith and without proper notice, and that Circle has not paid the transaction fees

required under the Agreements.[4] (See Amend. Compl. ¶¶ 319, 327, 331-32, 336-39.) Moreover, FT Partners seek the same damages for each alleged breach of the respective Agreements. (See id. ¶¶ 45, 320, 328; id. at 105-06.) See Quintanilla v. WW Int'l, Inc., 541 F. Supp. 3d 331, 352-53 (S.D.N.Y. 2021).

Nonetheless, FT Partners insist that the breach of contract claims and the breach of the implied covenant claims are distinct because pretextual termination may not constitute a breach of the Agreements' express terms, and therefore cannot be remedied through a breach of contract claim. (See Pls.' Opp'n at 18-19.) FT Partners allege that Circle manufactured the existence of Good Reasons to terminate the Agreements. (Id. at 19.) For example, in terminating the Agreements, Circle cited the Good Reason that neither McLaughlin nor Little were involved in any prospective transactions. (See Amend. Compl. ¶ 246.) FT Partners allege that termination on this basis was invalid, as (1) McLaughlin was not involved in the underlying transactions because Circle demanded that he cease all work relating to Circle and (2) Little was always the lead or co-lead advisor for FT Partners in its work on Circle

---

[4] In denying FT Partners' motion to remand, this Court concluded that FT Partners' breach of contract and breach of the implied covenant claims regarding the SeedInvest Agreement were based on the same factual allegations and dismissed the implied covenant claim against the Subsidiaries. See Fin. Tech. Partners LP, 2024 WL 4817473, at *6.

transactions. (See id. ¶¶ 181, 247.) Circle argues that the allegations that Circle manufactured grounds for termination, failed to meet the contractual preconditions for termination, or both, center on whether Circle breached the Agreements' termination provisions, including the express requirement of good faith. (See Def.'s Reply at 10.)

FT Partners' breach of the implied covenant allegations are encompassed by whether Circle breached the express terms of the Agreements. See Ghost in the Mach. Inc. v. Planned Parenthood Fed'n of Am., Inc., No. 22 Civ. 9270, 2025 WL 252913, at *5 (S.D.N.Y. Jan. 21, 2025) (breach of implied covenant claim based "on an action that breaches the express terms of a contract" will be dismissed as duplicative). FT Partners' allegations that Circle pretextually terminated the Agreements are not distinct from the breach of contract allegations: that the Agreements were improperly terminated because Circle did not make a good faith determination that a Good Reason existed, as expressly required by the termination clauses. See JN Contemp. Art LLC v. Phillips Auctioneers LLC, 507 F. Supp. 3d 490, 505 (S.D.N.Y. 2020) (allegation that defendant pretextually canceled the agreement was duplicative of the breach of contract allegation that defendant had an obligation to perform under the agreement because it was improperly terminated).

Because the breach of the implied covenant claims arise from the same facts and seek the same remedies as the breach of contract claims, FT Partners cannot sustain the implied covenant claims. See Deutsche Bank Nat'l Tr. Co. v. Quicken Loans Inc., 810 F.3d 861, 869 (2d Cir. 2015). Thus, FT Partners' breach of the implied covenant of good faith and fair dealing claims regarding the Circle Agreement (Count IV) and the SeedInvest Agreement (Count V) are dismissed.

C.    UNJUST ENRICHMENT

Unjust enrichment "rests upon the equitable principle that a person shall not be allowed to enrich himself unjustly at the expense of another." Network Enters., Inc. v. Reality Racing, Inc., No. 09 Civ. 4664, 2010 WL 3529237, at *7 (S.D.N.Y. Aug. 24, 2010) (quoting IDT Corp. v. Morgan Stanley Dean Witter & Co., 907 N.E.2d 268, 274 (N.Y. 2009)). FT Partners' may plead unjust enrichment as an alternative theory of recovery to a breach of contract claim where the validity or enforceability of a written agreement is disputed or the written agreement does not cover the full scope of the dispute between the parties. See Air Atlanta Aero Eng'g Ltd. v. SP Aircraft Owner I, LLC, 637 F. Supp. 2d 185, 195 (S.D.N.Y. 2009); ADYB Engineered for Life, Inc. v. Edan Admin. Servs. Ltd., No. 19 Civ. 7800, 2021 WL 1177532, at *22 (S.D.N.Y. Mar. 29, 2021). However, "[t]he existence of a valid

and enforceable written contract governing a particular
subject matter ordinarily precludes recovery in quasi
contract for events arising out of the same subject matter."
Air Atlanta Aero Eng'g Ltd., 637 F. Supp. 2d at 195 (quoting
Clark-Fitzpatrick, Inc. v. Long Island R.R. Co., 516 N.E.2d
190, 193 (N.Y. 1987)).

Here, the parties do not challenge the validity of the
Agreements but disagree on whether the Agreements cover the
full scope of their disputes. FT Partners argue that the
Agreements do not address (1) whether FT Partners are entitled
to compensation for their work on the SeedInvest Acquisition
and the May 2022 Capital Raise, which was performed prior to
Circle's termination of the Agreements, or (2) assuming
Circle's terminations were valid, whether FT Partners are
entitled to transaction fees for the SeedInvest Acquisition
and May 2022 Capital Raise because those transactions were
consummated after Circle terminated the Agreements. (See
Pls.' Opp'n at 24-27.) Circle maintains that the Agreements
address both issues. (See Def.'s Mem. at 18-20.) The Court
finds that these disputes over pre-termination compensation
and post-termination transaction fees are encompassed by the
Agreements.

Regarding pre-termination compensation, the Agreements
include fee provisions that outline FT Partners' compensation

for its advisory services, including any fees due for services rendered in connection with consummated transactions. (See SeedInvest Agreement § 2; Circle Agreement § 2.) Moreover, those fee provisions survive any termination of the Agreements. (See SeedInvest Agreement § 6; Circle Agreement § 6.) Because the Agreements "contain specific language about compensation, reimbursement, and the nature of the billing relationship," the Agreements "squarely govern[] the dispute at issue" and "a resort to equitable remedies is therefore inappropriate." Seven Hanover Assocs., LLC v. Jones Lang Lasalle Ams., Inc., No. 04 Civ. 4143, 2008 WL 464337, at *6 (S.D.N.Y. Feb. 19, 2008).

Regarding post-termination transaction fees, the Agreements state that upon a valid termination by Circle, FT Partners are entitled to any applicable transaction fee for any transaction that is entered into or consummated by Circle within the Tail Period, subject to conditions not relevant here.[5] (See SeedInvest Agreement § 6; Circle Agreement § 6.) Based on FT Partners' allegations, the respective Tail

---

[5] The Agreements include provisions stating that following a valid termination by Circle, Circle could seek reinstatement of the Agreement in connection with a transaction that was reasonably likely to be signed within the Tail Period. However, if FT Partners refused to reinstate the Agreement, FT Partners were not entitled to any transaction fee that had not already become payable at the time Circle requested reinstatement. (See SeedInvest Agreement § 6; Circle Agreement § 6.) FT Partners do not allege that Circle sought reinstatement of either Agreement in connection with the SeedInvest Acquisition or the May 2022 Capital Raise.

Periods extend to the transactions at issue – the SeedInvest Acquisition and the May 2022 Capital Raise – because both were entered into or consummated within twelve months of Circle's respective terminations of the Circle Agreement and the SeedInvest Agreement. (See Amend. Compl. ¶¶ 230, 256, 260, 267, 287, 300.) Whether FT Partners are entitled to fees for transactions consummated within the Tail Period is clearly encompassed by the Agreements. See Phillips 66 Co. v. Marine Petrobulk Ltd., No. 23-14, 2023 WL 8800718, at *7 (2d Cir. Dec. 20, 2023).

For the reasons discussed above, the disputes between the parties regarding compensation and fees are within the scope of the Agreements and are thus precluded by the breach of contract claims. Accordingly, the Court hereby dismisses FT Partners' unjust enrichment claims regarding the Circle Agreement (Count VI) and the SeedInvest Agreement (Count VII).

## IV.  ORDER

For the foregoing reasons, it is hereby

**ORDERED** that the motion (Dkt. No. 72) of defendant Circle Internet Financial Limited to partially dismiss the Amended Complaint of plaintiffs Financial Technology Partners LP and FTP Securities LLC (Dkt. No. 40) is **GRANTED.** Counts I, IV, V,

VI, and VII of the Amended Complaint are dismissed without prejudice.

The Clerk of Court is respectfully directed to terminate any pending motions.


**SO ORDERED.**

Dated:    24 March 2025
          New York, New York

_____
          Victor Marrero
          U.S.D.J.