## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| FINANCIAL TECHNOLOGY PARTNERS LP AND FTP SECURITIES LLC,<br><br>        *Plaintiffs,*<br><br>v.<br><br>CIRCLE INTERNET FINANCIAL LIMITED,<br><br>        *Defendant.* | Case No. 24 Civ. 4717 (VM) |

## ANSWER TO AMENDED COMPLAINT

Defendant Circle Internet Financial Limited ("Circle"), through its undersigned counsel, hereby responds to Plaintiff Financial Technology Partners LP's and FTP Securities' (together, "FT") First Amended Complaint ("Amended Complaint") as follows, using numbered paragraphs corresponding to the numbered paragraphs in the Amended Complaint.

Unless expressly stated otherwise, Circle denies every allegation in the Amended Complaint, including any allegations in the preamble, unnumbered and numbered paragraphs, titles, and footnotes,[1] and specifically denies any liability to FT. Circle reserves the right to seek to amend or supplement this Answer.

---

[1] The headings and subheadings used in the Amended Complaint appear to be a guide to organizing FT's allegations, rather than including allegations. To the extent that a response is required to these headings and subheadings, Circle denies any allegations in those headings or subheadings except to admit that FT has asserted the claims described therein.

## RESPONSES TO SPECIFIC ALLEGATIONS

## NATURE OF ACTION

1.    Circle denies the allegations in this paragraph, except Circle admits that (i) the Amended Complaint included a claim for declaratory judgment, which the Court has since dismissed; and (ii) FT seeks alleged damages for "fees, expenses, interest, and attorney's fees."

2.    Circle denies the allegations in this paragraph, except Circle admits that (i) this paragraph quotes a portion of Circle Acquisition Public Limited Company's (also known as Circle Internet Finance Public Limited Company and referred to in this Answer under either name as "Topco") August 6, 2021, Form S-4 ("August 6, 2021 Form S-4"), which was publicly available, including to Circle's stockholders; and (ii) in 2019, Circle was unable to raise capital under terms that were acceptable to Circle, and three investment banks had been involved in those efforts.

3.    Circle denies the allegations this paragraph, except Circle admits that (i) it reached out to FT and Steve McLaughlin (FT's founder and CEO); (ii) FT is an investment banking firm that holds itself out as "focused exclusively on the financial technology sector"; and (iii) Circle retained FT as a financial and strategic advisor under the terms of the July 1, 2020, engagement letter ("Circle Agreement") and September 19, 2020, engagement letter ("SeedInvest Agreement," and together with the Circle Agreement, the "Agreements"[2]).

---

[2] Capitalized terms not otherwise defined in this Answer have the meaning as set forth in the Circle Agreement or SeedInvest Agreement, as may be relevant.

4.    Circle denies the allegations in this paragraph, except Circle admits that (i) FT agreed to act as Circle's advisor per the terms of the Circle Agreement (and later the SeedInvest Agreement); and (ii) a Capital Raise and Company Sale were not certain at the time the Circle Agreement was executed.

5.    Admitted.

6.    Circle denies the allegations in this paragraph, except Circle admits that the Circle Agreement sets forth the Transaction Fees the parties agreed to and how those fees were to be calculated.

7.    Circle denies the allegations in this paragraph, except Circle admits that (i) the Circle Agreement sets forth when FT could potentially earn, and how to calculate, a Transaction Fee for a Capital Raise; and (ii) this paragraph quotes a portion of the Circle Agreement.

8.    Circle denies the allegations in this paragraph, except Circle admits that (i) the parties negotiated (and the Circle Agreement sets forth) when FT could potentially earn, and how to calculate, a Transaction Fee for a Company Sale; and (ii) this paragraph quotes portions of the Circle Agreement.

9.    Circle denies the allegations in this paragraph, except Circle admits that (i) this paragraph quotes a portion of the Circle Agreement; and (ii) the Circle Agreement sets forth when FT could potentially earn a Transaction Fee for a Capital Raise or Company Sale.

10.    Circle denies the allegations in this paragraph, except Circle admits that (i) this paragraph quotes a portion of the Circle Agreement; and (ii) the Circle

Agreement sets forth circumstances under which FT could potentially earn a fee for an alternative transaction.

11.     Circle denies the allegations in this paragraph, except Circle admits that (i) this paragraph quotes portions of the Circle Agreement, except that "transaction" should be capitalized; and (ii) Circle had the right to approve any FT announcement, per the Circle Agreement, in advance.

12.     Circle denies the allegations in this paragraph, except Circle admits that the Circle Agreement describes circumstances in which the Circle Agreement would terminate, including the consummation of a Company Sale or if Circle terminated the agreement in accordance with Section 6.

13.     Circle denies the allegations in this paragraph, except Circle admits that this paragraph quotes portions of a May 2020 email thread involving Mr. Allaire and Mr. McLaughlin.

14.     Denied.

15.     Circle denies the allegations in this paragraph, except Circle admits that (i) it obtained a $25 million loan in July 2020 ("2020 Loan") and paid FT a fee for that transaction; (ii) it raised approximately $451 million in funding through the issuance of convertible notes between March 2021 and July 2021 ("Convertible Note Financing"), of which approximately $440 million had been raised by May 2021; and (iii) FT assisted in aspects of the Convertible Note Financing and Circle paid FT a Capital Raise fee for the same.

16.     Denied.

17.     Circle denies the allegations in this paragraph, except Circle admits that (i) FT and Circle entered the SeedInvest Agreement on September 19, 2020; (ii) the SeedInvest Agreement sets forth the terms of the parties' agreement related to the services FT would provide thereunder; and (iii) certain terms of the SeedInvest Agreement are similar or identical to terms in the Circle Agreement.

18.     Circle denies the allegations in this paragraph, except Circle admits that (i) the SeedInvest Agreement sets forth when FT could potentially earn, and how to calculate, a Transaction Fee for an SI Sale; and (ii) this paragraph quotes portions of the SeedInvest Agreement.

19.     Circle denies the allegations in paragraph 19, except Circle admits that it received an offer for SeedInvest in March 2021.

20.     Circle denies the allegations in this paragraph, except (i) Circle lacks sufficient knowledge or information to form a belief about the truth of the allegation that Concord Acquisition Corp. ("Concord") was "unknown to Circle and vice versa"; (ii) Circle admits that Concord was a party known to FT at least as of January 2021; (iii) Circle admits that Circle and Concord (a Special Purpose Acquisition Company ("SPAC")) signed a non-binding term sheet on March 6, 2021 ("2021 Term Sheet"), reflecting terms of a contemplated transaction between Circle and Concord,[3] and FT assisted Circle in the negotiation of the 2021 Term Sheet; and (iv) Circle lacks

---

[3] In this Answer, "Concord transaction" refers to the proposed transaction contemplated by the 2021 Term Sheet, the July 7, 2021 Business Combination Agreement ("2021 BCA"), and February 16, 2022 Transaction Agreement ("2022 Transaction Agreement"), as may be relevant depending on the particular time period.

sufficient knowledge or information to form a belief about the truth of the allegations in the last sentence of this paragraph.

21.     Circle denies the allegations in this paragraph, except Circle admits that (i) the 2021 BCA, dated July 7, 2021, among Circle, Concord, and other entities, sets forth the terms of the Concord transaction; and (ii) Topco was a holding company formed for the proposed Concord transaction.

22.     Circle denies the allegations in this paragraph, except Circle admits that (i) on February 16, 2022, Circle, Concord, and other entities signed the 2022 Transaction Agreement; and (ii) the 2021 BCA valued Circle at approximately $4.5 billion, the 2022 Transaction Agreement valued Circle at approximately $9 billion, and each agreement contemplated potential earnout payments to Circle's then-existing shareholders.

23.     Denied.

24.     Denied.

25.     Circle denies the allegations in this paragraph, except (i) Circle admits that because the Concord transaction was not a Company Sale under the Circle Agreement, it told FT that Circle would not owe FT a Company Sale Transaction Fee on the Concord transaction; and (ii) Circle lacks sufficient knowledge or information to form a belief about the truth of the allegation that Circle's outside counsel "worked for another client-company that had paid FT Partners a Company Sale fee after a de-SPAC transaction under a similar agreement."

26.     Circle denies the allegations in this paragraph, except Circle admits that (i) Circle demanded that Mr. McLaughlin (FT's CEO, managing partner, and founder) "be immediately removed from the FT working team" in April 2021, including because of his conduct exhibiting a "conflict of interest materially detrimental to" Circle; (ii) Circle informed FT that FT's demanded Company Sale fee for the Concord transaction threatened Circles' ability to consummate the Concord transaction; and (iii) Circle entered the 2021 BCA on July 7, 2021, which valued Circle at approximately $4.5 billion, and the 2022 Transaction Agreement on February 16, 2022, which valued Circle at approximately $9 billion.

27.     Denied.

28.     Circle denies the allegations in this paragraph, except Circle admits that (i) FT demanded that Circle pay a Company Sale fee for the Concord transaction and proposed "accepting part or all of it in stock, deferring part of the payment, or restructuring the payment"; (ii) FT took the position that if the Concord transaction "constitutes an 'alternative transaction,'" then Circle "would still owe FT Partners Transaction Fees upon any future Company Sale or Capital Raise (of which there could be numerous, even post the Transaction)," which position Circle did not accept; and (iii) an alternative transaction fee on the Concord transaction would have been substantially less than the Company Sale fee that FT demanded.

29.     Denied.

30.     Circle denies the allegations in this paragraph, except Circle admits that (i) on April 12, 2022, it announced it had entered into an agreement for an

approximately "$400M funding round" ("Series F Fundraising"); and (ii) on April 8, 2022, Mr. Allaire (Circle's CEO) sent FT a letter terminating the Circle Agreement and informing FT of the Good Reasons for termination, as determined in good faith by Circle's Board of Directors, as well as the Board's determination that "these matters have not been and cannot be cured."

31.   Denied.

32.   Circle denies the allegations in this paragraph, except Circle lacks sufficient knowledge or information to form a belief about the truth of the allegation that FT was "conflict[ed] . . . out of other potentially lucrative client relationships."

33.   Circle denies the allegations in this paragraph and accompanying footnote, except Circle admits that (i) it terminated the Circle Agreement on April 8, 2022 and announced the Series F Fundraising on April 12, 2022; (ii) the Series F Fundraising was an approximately $400 million funding round; and (iii) Topco's July 11, 2022, Form S-4, disclosed that "[o]n May 9, 2022, Circle completed its Series F financing."

34.   Denied.

35.   Circle denies the allegations in this paragraph, except Circle admits that (i) this paragraph quotes a portion of the Circle Agreement; (ii) on August 19, 2022, FT sent Circle an invoice dated August 16, 2022 demanding a $28.07 million fee for the Series F Fundraising; and (iii) Circle has not paid FT the $28.07 million fee FT demanded.

36.     Circle denies the allegations in this paragraph, except Circle admits that it sent FT a letter on August 26, 2022, terminating the SeedInvest Agreement and informing FT of the Good Reasons for termination, as determined in good faith by Circle's Board of Directors, as well as the Board's determination that "these matters have not been and cannot be cured."

37.     Circle denies the allegations in this paragraph, except Circle admits that (i) the August 26, 2022 letter informed FT of the Good Reasons for termination, as determined in good faith by Circle's Board of Directors, as well as the Board's determination that "these matters have not been and cannot be cured"; and (ii) Mr. McLaughlin and Mr. Little provided services to Circle prior to Circle's April 2021 letters limiting FT's work.

38.     Denied.

39.     Circle denies the allegations in this paragraph, except Circle admits (i) the allegations in the first sentence of this paragraph; and (ii) the Asset Purchase Agreement sets forth the terms of the SeedInvest transaction.

40.     Circle denies the allegations in this paragraph, except Circle admits that (i) it entered a non-disclosure agreement with StartEngine on August 17, 2022; (ii) it terminated the SeedInvest Agreement on August 26, 2022; (iii) the Asset Purchase Agreement was executed on October 24, 2022; and (iv) its August 26, 2022, termination letter does not mention the SeedInvest transaction.

41.    Circle denies the allegations in this paragraph, except Circle admits (i) the first sentence of this paragraph; and (ii) that FT was never owed, and is not owed, a Company Sale fee for the Concord transaction.

42.    Circle denies the allegations in this paragraph, except Circle admits that (i) on November 17, 2023, FT sent Circle an invoice dated November 16, 2023, demanding that Circle pay FT a "Transaction Fee" and certain expenses for the SeedInvest transaction; and (ii) Circle has not paid FT the amounts FT demanded in the invoice.

43.    Circle denies the allegations in this paragraph, except Circle admits that (i) in August of 2023, Circle issued 3.5% of its fully diluted equity to Coinbase Global, Inc. ("Coinbase"), which Coinbase gave an estimated fair value of $51.1 million according to its 10-Q; and (ii) on November 17, 2023, FT sent Circle an invoice dated November 16, 2023, demanding that Circle pay a "Capital Raise" fee and expenses for this transaction.

44.    Circle denies the allegations in this paragraph, except Circle admits that (i) in February 2021, Circle raised the question of what fee FT would be paid for its work on the Concord transaction because the transaction was neither a Company Sale nor a Capital Raise; and (ii) on March 4, 2021—after FT had demanded a Company Sale fee for the Concord transaction and prior to the execution of the 2021 Term Sheet—in the interest of compromise, Circle proposed to pay FT a transaction fee that was less than the Company Sale fee FT demanded but much more than what

Circle believed a fee consistent with "custom and practice among investment bankers in similar size and type of transactions" would be.

45.     Circle denies the allegations in this paragraph, including that FT is entitled to any relief, except Circle admits that (i) FT sought a declaratory judgment "that the Circle Agreement is still in full force and effect," which claim the Court has dismissed; (ii) FT seeks "specific performance" of certain alleged obligations under Sections 7 and 9 of the Circle Agreement and Section 7 of the SeedInvest Agreement; and (iii) FT asserted claims against defendants other than Circle, who the Court has dismissed from this case.

46.     Denied.

## THE PARTIES

47.     Circle admits the allegations in the first and last sentences of this paragraph and admits the allegations in the second sentence of this paragraph based on information FT filed with the Court. Circle lacks sufficient knowledge or information to form a belief about the truth of the allegations in the third sentence of this paragraph.

48.     Admitted, based on information FT filed with the Court.

49.     Circle admits that Steven J. McLaughlin is a Florida domiciliary and citizen and admits the remaining allegations in this paragraph based on information FT filed with the Court.

50.     Admitted, based on information FT filed with the Court.

51.     Admitted, based on information FT filed with the Court.

52.    Circle admits the allegations in the first two sentences of this paragraph and admits the remaining allegations in this paragraph based on information FT filed with the Court.

53.    Circle denies the allegations in this paragraph, except Circle admits (i) the first and fourth sentences of this paragraph; (ii) Circle is the indirect parent of the company that developed USDC, a dollar-denominated stablecoin; (iii) that this paragraph quotes a portion of Topco's August 6, 2021 Form S-4; and (iv) that as of July 1, 2024, Circle became a wholly owned subsidiary of Circle Internet Group, Inc. ("CIGI"), a Delaware corporation.

54.    The allegations in this paragraph are directed at another, now-dismissed party, and therefore no response is required.

55.    The allegations in this paragraph are directed at another, now-dismissed party, and therefore no response is required.

56.    The allegations in this paragraph are directed at another, now-dismissed party, and therefore no response is required.

57.    The allegations in this paragraph are directed at another, now-dismissed party, and therefore no response is required.

## JURISDICTION AND VENUE

58.    Circle admits the allegations in this paragraph, except that Circle agreed to submit to jurisdiction of the courts in New York County, not anywhere in New York.

59.    Circle admits the allegations in this paragraph that concern Circle, except that Circle agreed to submit to jurisdiction of the courts in New York County,

not anywhere in New York. The allegations in this paragraph that concern the other "Defendants" are directed at other, now-dismissed parties, and therefore no response is required.

60.    The allegations in this paragraph are directed at other, now-dismissed parties and, therefore no response is required.

61.    Circle denies the allegations in this paragraph, except Circle admits that the Circle Agreement has a New York choice-of-law clause and lacks sufficient knowledge or information to form a belief about whether FT is "based in part in New York."

62.    Circle denies the allegations in this paragraph, except (i) Circle admits that the SeedInvest Agreement has a New York choice-of-law clause; (ii) Circle lacks sufficient knowledge or information to form a belief about whether FT is "based in part in New York"; and (iii) the allegations in this paragraph that concern the other "Defendants" are directed at other, now-dismissed parties, and therefore no response is required.

63.    The allegations in this paragraph that concern the other "Defendants" are directed at other, now-dismissed parties, and therefore no response is required. Circle lacks sufficient knowledge or information to form a belief about the remainder of the allegations in this paragraph.

64.    Circle denies the allegations in this paragraph, except (i) Circle admits that venue is proper in the United States District Court for the Southern District of New York; (ii) Circle admits that, before Circle properly removed the case to the

13

United States District Court for the Southern District of New York, venue was proper in New York Supreme Court in New York County; and (iii) the allegations in this paragraph that concern the other "Defendants" are directed at other, now-dismissed parties, and therefore no response is required.

65.    Admitted.

66.    Denied.

## FACTS

67.    Circle denies the allegations in this paragraph, except Circle admits that (i) on May 15, 2020, Jeremy Allaire, Circle's co-founder and CEO, contacted Steve McLaughlin, FT's founder, managing partner, and CEO, about providing financial advisory services for a potential company sale or private capital raise; (ii) Circle admits that FT is an investment banking firm that holds itself out as "focused exclusively on the financial technology sector"; (iii) FT holds itself out as being founded more than 20 years ago; (iv) FT told Circle in May 2020 that it had "advis[ed] on multi-billion-dollar transactions"; (v) FT asserts on its website the allegations in the fourth sentence in this paragraph; and (vi) FT announced that it had advised on a $1.7 billion "SPAC Business Combination" that was completed on June 10, 2020, and lacks sufficient knowledge or information to form a belief about the truth of the remainder of the allegations in the last sentence of this paragraph.

68.    Circle denies the allegations in this paragraph, except Circle admits that in 2019 it was unable to raise capital under offer terms acceptable to Circle and that this process had included the involvement of Barclays, Nomura, and China International Capital Corporation.

14

69.    Admitted.

70.    Denied.

71.    Denied.

72.    Circle denies that it was a "risky prospect[]." Circle lacks sufficient knowledge or information to form a belief about the truth of the remainder of the allegations in this paragraph.

73.    Circle denies the allegations in this paragraph, except Circle admits that this paragraph quotes a portion of a May 24, 2020, email from Mr. McLaughlin to Mr. Allaire.

74.    Circle denies the allegations in this paragraph, except (i) Circle admits that a portion of a May 2020 email thread involving Mr. Allaire and Mr. McLaughlin contains the quoted words in the fourth and fifth sentences; and (ii) Circle lacks sufficient knowledge or information to form a belief about the truth of the allegations in the last two sentences of this paragraph.

75.    Circle denies the allegations in this paragraph, except Circle admits that (i) on July 1, 2020, Circle and FT signed the Circle Agreement, which is attached to the Amended Complaint as Exhibit A, and which sets forth the terms of the parties' agreement; and (ii) this paragraph quotes portions of the Circle Agreement.

76.    Admitted.

77.    Admitted.

78.    Circle denies the allegations in the introduction to this paragraph, except Circle admits that FT assumed a "close" position of trust and confidence to

Circle upon entering the Circle Agreement. Circle denies the allegations in subparagraphs 78(a), 78(b), 78(c), 78(e), 78(h), and 78(i), except (i) Circle admits that certain of those subparagraphs quote portions of the Circle Agreement; and (ii) Circle lacks sufficient knowledge or information to form a belief about the truth of the allegation that alleged "publicity rights . . . are of critical value to a company like FT Partners that relies on its reputation to engage future clients." Circle denies the allegations in subparagraph 78(d), except Circle admits (i) that Section 2, as well as other terms of the Circle Agreement, describe the fees that FT could potentially earn under the Circle Agreement; and (ii) Circle intended the Circle Agreement's fee structure to incentivize FT to act in Circle's best interests. Circle denies the allegations of subparagraph 78(f), except Circle admits that Section 6 of the Circle Agreement sets forth certain circumstances under which Circle had the right to terminate the Circle Agreement. Circle denies the allegations in subparagraph 78(g), except Circle admits (i) that subparagraph 78(g) quotes a portion of the Circle Agreement; and (ii) that Section 6 of the Circle Agreement describes what fees, if any, FT could potentially earn after termination. Circle admits the allegations in subparagraph 78(j) but denies that the quoted language is complete.

79.    Denied.

80.    Circle denies the allegations in this paragraph, except Circle admits that the Circle Agreement sets forth when FT could potentially earn fees and potentially be reimbursed for expenses under the Circle Agreement.

81.    Admitted.

16

82. Circle denies the allegations in this paragraph, except Circle admits that the Circle Agreement sets forth when FT could potentially earn, and how to calculate, a Transaction Fee for a Capital Raise or Company Sale, and that FT had the potential to earn substantial fees under the Agreement in certain circumstances.

83. Admitted.

84. Admitted.

85. Circle admits that Annex B to the Circle Agreement defines Capital Raise, a portion of which definition this paragraph quotes but denies that this paragraph sets forth the complete definition of Capital Raise.

86. Admitted.

87. Circle denies the allegations in this paragraph, except Circle admits that it negotiated the Circle Agreement with the assistance of experienced counsel at Goodwin Proctor, and it is "a company managed and overseen by sophisticated directors and officers."

88. Admitted.

89. Circle admits that this paragraph quotes a portion of Section 2(b)(ii) of the Circle Agreement.

90. Circle denies the allegations in this paragraph and accompanying footnote, except Circle admits that (i) the footnote in this paragraph quotes a portion of Topco's August 31, 2022 S-4; (ii) this paragraph quotes a portion of the Circle Agreement, except that "transaction" in romanette (i) is capitalized in the Circle

17

Agreement; and (iii) the Circle Agreement sets forth what fees, if any, Circle might owe FT, including when interest would accrue and how such a fee would be paid.

91.    Circle denies the allegations in this paragraph, except it admits that the Circle Agreement describes an "alternative transaction" as a transaction that Circle completes in lieu of a Capital Raise or Company Sale.

92.    Circle denies the allegations in this paragraph, except it admits that this paragraph quotes Section 2(d) of the Circle Agreement.

93.    Denied.

94.    Circle denies the allegations in this paragraph, except Circle admits that (i) the Circle Agreement sets forth circumstances under which FT could potentially be reimbursed for expenses; and (ii) this paragraph quotes a portion of Section 3 of the Circle Agreement.

95.    Circle admits this paragraph quotes a portion of Section 10 of the Circle Agreement.

96.    Circle denies the allegations in this paragraph, except it admits that this paragraph quotes a portion of the Circle Agreement.

97.    Circle denies the allegations in this paragraph, except Circle admits that (i) this paragraph quotes a portion of the Circle Agreement, with emphasis added by the Amended Complaint; and (ii) the Circle Agreement sets forth when FT could potentially earn a Transaction Fee.

98.    Circle denies the allegations in this paragraph, except Circle admits that (i) Section 6 of the Circle Agreement sets out circumstances under which Circle had

18

the right to terminate the Circle Agreement; and (ii) this paragraph quotes a portion of Section 6 of the Circle Agreement.

99.    Denied.

100.    Denied.

101.    Admitted.

102.    Circle lacks sufficient knowledge or information to form a belief about the truth of the allegations in this paragraph.

103.    Circle denies the allegations in this paragraph, except Circle admits that this paragraph quotes a portion of the Circle Agreement.

104.    Circle denies the allegations in this paragraph, except Circle admits that this paragraph quotes portions of the Circle Agreement.

105.    Denied.

106.    Circle denies the allegations in this paragraph, except Circle admits that (i) Circle and its Board were aware of the terms of the Circle Agreement and understood that FT could potentially earn substantial fees under the agreement; (ii) the Circle Agreement sets forth when FT could potentially earn, and how to calculate, a Transaction Fee for a Company Sale; and (iii) the Circle Agreement describes circumstances in which the Circle Agreement would terminate, including upon the consummation of a Company Sale or Circle's termination of the Agreement in accordance with Section 6.

107.    Circle denies the allegations in this paragraph, except it admits that FT began work prior to the execution of the Circle Agreement on July 1, 2020.

108.    Denied.

109.    Circle denies the allegations in this paragraph and accompanying footnote, except Circle admits (i) that Circle paid FT a fee for both the 2020 Loan and Convertible Note Financing, that no further amount is owed on either transaction, and that FT admits that Circle did not breach the Circle Agreement for the 2020 Loan and the Transaction Fee for the Convertible Note Financing; (ii) that as to the 2020 Loan, Circle obtained $25 million in July 2020; (iii) that as to the Convertible Note Financing, Circle raised approximately $451 million between March 2021 and July 2021, of which approximately $440 million had been raised by May 2021, FT assisted in aspects of the Convertible Note Financing, which was a Capital Raise under the Circle Agreement; (iv) the allegations in the second sentence of this paragraph; and (v) that the fourth and fifth sentences of this paragraph, respectively, quote portions of a March 2021 email from Mr. Allaire and Circle's December 31, 2020 and 2019 Consolidated Financial Statements.

110.    Circle denies the allegations in this paragraph, except Circle admits that (i) Circle and FT executed the SeedInvest Agreement on September 19, 2020, and the Circle Agreement on July 1, 2020; (ii) FT agreed in the SeedInvest Agreement to act as a "financial and strategic advisor in connection with a possible Transaction," as that term is defined in the SeedInvest Agreement; and (iii) certain terms of the SeedInvest Agreement are similar or identical to terms in the Circle Agreement.

111.    This paragraph does not contain any allegations to which a response is required. To the extent that a response is required, Circle denies the allegations.

112.   Admitted.

113.   Circle admits the allegations in this paragraph, except that it denies that the quoted language from the Agreements is complete.

114.   Denied.

115.   Circle denies the allegations in this paragraph, except Circle admits that (i) the parties negotiated the fee provisions in the Agreements; (ii) the Circle Agreement sets forth how to calculate a Transaction Fee for a Company Sale and the SeedInvest Agreement sets forth how to calculate a Transaction Fee for an SI Sale; and (iii) this paragraph quotes portions of the SeedInvest Agreement.

116.   Circle denies the allegations in this paragraph, except Circle admits that (i) the Agreements set forth circumstances under which FT could potentially be reimbursed for expenses; and (ii) this paragraph quotes a portion of each Agreement's respective Section 3.

117.   Circle denies the allegations in this paragraph, except Circle admits that this paragraph quotes a portion of each Agreement's respective Section 7.

118.   Circle admits that this paragraph quotes a portion of each Agreement's respective Section 10.

119.   Circle denies the allegations in this paragraph, except Circle admits that like the Circle Agreement, the SeedInvest Agreement describes circumstances in which the agreement would terminate, including the consummation of an SI Sale or if Circle terminated the Agreement in accordance with Section 6.

120.    Circle denies the allegations in this paragraph, except Circle admits that this paragraph quotes a portion of Section 6 of the SeedInvest Agreement.

121.    Admitted.

122.    Denied.

123.    Denied.

124.    Admitted.

125.    Circle denies the allegations in this paragraph and accompanying footnote, except Circle admits (i) the first and third sentence of this paragraph; and (ii) that a portion of a September 22, 2021 article at the link in the footnote contains the words in quotes in the main body of this paragraph with emphasis added by the Amended Complaint, and a portion of the June 13, 2022 letter at the link in the footnote contains the words in quotes in the footnote of this paragraph.

126.    Circle denies the allegations in this paragraph and accompanying footnote, except Circle lacks sufficient knowledge or information to form a belief about the truth of the allegations in the second sentence of this paragraph.

127.    Circle denies the allegations in this paragraph, except Circle admits that this paragraph quotes a portion of a January 2020 *Forbes* article.

128.    Circle admits the allegations in the first sentence of this paragraph. Circle admits that the second sentence of this paragraph quotes a portion of Concord's prospectus, with emphasis added by the Amended Complaint.

129.   Circle admits the first two sentences of this paragraph. Circle lacks sufficient knowledge or information to form a belief about the remainder of this paragraph.

130.   Circle denies the allegations in this paragraph, except (i) Circle admits that FT was unsuccessful in finding any buyer or investor in Circle in 2020; and (ii) Circle lacks sufficient knowledge or information to form a belief about the truth of the allegation that FT contacted "100+ firms" in 2020 and "none was willing to take a lead investor role in a deal that would value Circle at even $300 million."

131.   Denied.

132.   Circle denies the allegations in this paragraph, except Circle admits that an FT employee sent Circle a "Process Update" presentation on January 15, 2021, which references certain SPACs, including Concord, and that this paragraph quotes a portion of that presentation.

133.   Circle denies the allegations in this paragraph, except (i) Circle admits that two SPACS (one of which was Concord) submitted term sheets to Circle for a potential transaction; (ii) Circle admits that FT sent Circle materials identifying approximately 30 SPACs, including the two that submitted term sheets, and that FT was involved in outreach to those SPACs; and (iii) Circle lacks sufficient knowledge or information to form a belief about the truth of the allegations in the second sentence of this paragraph.

134.   Denied.

135.   Denied.

136.    Circle denies the allegations in this paragraph, except (i) Circle admits the allegations in the first sentence of this paragraph; (ii) Circle admits that Concord was a party known to FT at least as of January 2021; and (iii) Circle lacks sufficient knowledge or information to form a belief about the truth of the allegation that Concord was "fully unknown to Circle and vice versa."

137.    Circle denies the allegations in the first sentence of this paragraph, except it lacks sufficient knowledge or information to form a belief about FT's "relationship" with certain Concord principals. Circle lacks sufficient knowledge or information to form a belief about the truth of the remaining allegations in this paragraph.

138.    Circle admits that at Circle's request, an FT Partners employee first contacted Concord regarding Circle via an email dated January 22, 2021. Circle lacks sufficient knowledge or information to form a belief about the truth of the remaining allegations in this paragraph.

139.    Circle lacks sufficient knowledge or information to form a belief about the truth of the allegations in this paragraph, except Circle admits that FT and Concord had an introductory call to discuss Circle on January 28, 2021, after which FT sent Concord a presentation about Circle.

140.    Circle denies the allegations in the first sentence of this paragraph, except Circle admits that on February 2, 2021, Circle, Concord, and possibly Mr. Little from FT, joined a videoconference. Circle lacks sufficient knowledge or information to form a belief about the second sentence of this paragraph.

141.    Circle denies the allegations in this paragraph, except Circle admits that on February 10, 2021, Circle and Concord signed a non-disclosure agreement to facilitate the sharing of information between the companies.

142.    Circle denies the allegations in this paragraph, except Circle admits that on February 28, 2021, FT provided a template term sheet to Concord that included an earnout example.

143.    Circle lacks sufficient knowledge or information to form a belief about the truth of the allegations in this paragraph.

144.    Circle lacks sufficient knowledge or information to form a belief about the truth of the allegations in this paragraph.

145.    Circle denies the allegations in this paragraph, except it admits that on March 2, 2021, Concord sent Mr. Allaire and representatives of FT a draft term sheet that proposed an equity valuation for Circle of approximately $4.5 billion, as well as an earnout structure noted for further discussion.

146.    Circle denies the allegations in this paragraph, except Circle admits that (i) on March 3, 2021, Mr. McLaughlin emailed Circle proposed changes to the term sheet; and (ii) this paragraph quotes a portion of a March 3, 2021, email from Mr. Allaire.

147.    Circle admits the allegations in this paragraph, except that it denies Mr. Allaire "entrusted the deal to Mr. McLaughlin," and denies that the paragraph contains a complete portrayal of the events on May 5 and 6, 2021.

148.    Circle denies the allegations in the first and third sentences in this paragraph. Circle lacks sufficient knowledge or information to form a belief about the truth of the allegations in the second sentence of this paragraph.

149.    Circle denies the allegations in this paragraph, except Circle admits that the Term Sheet sets forth non-binding terms for the Concord transaction and FT was involved in negotiating aspects of those terms.

150.    Circle denies the allegations in this paragraph, except Circle admits that (i) the Term Sheet sets forth non-binding terms for the Concord transaction, and FT was involved in negotiating aspects of those terms; and (ii) this paragraph quotes a portion of a March 6, 2021, email from Mr. Little.

151.    Circle denies the allegations in this paragraph and accompanying footnote, except (i) Circle admits that this paragraph quotes a portion of a March 6, 2021, email from Mr. Allaire; (ii) Circle admits that by March 4, 2021, the parties had a fee dispute, with FT claiming it was entitled to an approximately $400 million Company Sale fee for the Concord transaction, and Circle disputing FT's entitlement to such a fee; (iii) Circle admits that FT's fee demand was based on the equity valuation of Circle in connection with the Concord transaction, which increased from approximately $4.5 billion to approximately $9 billion between 2021 and 2022; and (iv) Circle lacks sufficient knowledge or information to form a belief about the truth of the allegations about statements made during the March 4 videoconference.

152.    Circle denies the allegations in this paragraph, except Circle admits that this paragraph quotes a portion of a March 8, 2021, email from Mr. Helgeson of Concord to Mr. Allaire.

153.    Circle denies the allegations in this paragraph, except Circle admits that FT and Circle entered the Circle Agreement on July 1, 2020 and the SeedInvest Agreement on September 19, 2020, before negotiations with Concord began.

154.    Circle admits that FT performed some work to help find a buyer for SeedInvest. Circle lacks sufficient knowledge or information to form a belief about the truth of the remaining allegations in this paragraph.

155.    Circle denies the allegations in this paragraph, except (i) Circle admits that it received an offer for SeedInvest in March 2021, and FT assisted in certain discussions with that prospective buyer and others; and (ii) Circle lacks sufficient knowledge or information to form a belief about the truth of the allegation that FT "had an introduction call" with that potential buyer.

156.    Circle denies the allegations in this paragraph, except it admits that (i) it signed the 2021 Term Sheet on March 6, 2021; and (ii) on March 23, 2021, Circle's Board decided to reject an offer for SeedInvest and to retain SeedInvest for the time.

157.    Denied.

158.    Circle denies the allegations in this paragraph, except Circle admits that the Circle Agreement sets forth when FT could potentially earn, and how to calculate, a Transaction Fee for a Company Sale.

159.    Circle denies the allegations in this paragraph, except Circle admits that (i) on or around February 12, 2021, Mr. Corker (a former employee of an indirect subsidiary of Circle) and Mr. Little discussed the fee that should be paid to FT for its work on the Concord transaction; (ii) Mr. McLaughlin and Mr. Allaire subsequently discussed the same topic; (iii) Circle lacks sufficient knowledge or information to form a belief about the truth of the allegations in the fourth sentence of this paragraph; and (iv) Circle admits that FT did not send an invoice for a fee on the Concord transaction.

160.    Circle denies the allegations in this paragraph, except it admits that (i) it signed the 2021 Term Sheet on March 6, 2021; and (ii) on March 4, 2021, in the interest of compromise, Mr. Allaire sent Mr. McLaughlin an email that proposed a transaction fee of $200 million "in aggregate value," which was approximately half of the Company Sale fee that FT demanded, but much more than what Circle believed a fee consistent with "custom and practice among investment bankers in similar size and type of transactions" would be; and (iii) FT rejected Circle's proposal.

161.    Denied.

162.    Circle denies the allegations in this paragraph, except Circle admits that the Circle Agreement sets forth three alternative definitions of Company Sale, portions of which this paragraph quotes.

163.    Circle denies the allegations in this paragraph, including insofar as they purport to summarize or characterize communications from Circle to FT, except (i) Circle admits that a March 10, 2021 letter from Circle to FT ("March 10 letter"),

28

and later Circle communications, explained various reasons why the Concord transaction would not qualify as a Company Sale under the Circle Agreement; (ii) Circle admits that the third sentence of this paragraph quotes a portion of the Company Sale definition in the Circle Agreement, with emphasis added by the Amended Complaint; and (iii) Circle lacks sufficient knowledge or information to form a belief about the truth of the allegations in the footnote in this paragraph, except Circle admits that the footnote quotes a portion of a press release posted at the listed URL.

164.    Circle denies the allegations in this paragraph, including insofar as they purport to summarize or characterize communications from Circle to FT, except Circle admits that (i) the March 10 letter, and later Circle communications, explained various reasons why the Concord transaction would not qualify as a Company Sale under the Circle Agreement; (ii) the second sentence of this paragraph quotes a portion of the Company Sale definition in the Circle Agreement; and (iii) had the Concord transaction been consummated, Circle's shareholders would continue to own a substantial majority of Circle through Topco (originally named Circle Acquisition Public Limited Company), which would have become the sole shareholder of Circle.

165.    Circle denies the allegations in this paragraph, including insofar as they purport to summarize or characterize communications from Circle to FT, except Circle admits that in an April 1, 2021, letter, it explained that even if the Concord transaction would be a Company Sale (which it would not), FT would "receive at most the Minimum Fee of $4,000,000" because the Aggregate Consideration for the

transaction would be $0, the fair market value of Topco's shares the day before Circle's shareholders exchanged their shares in Circle for shares in Topco.

166.    Circle denies the allegations in this paragraph, except Circle admits that (i) this paragraph quotes a portion of Circle's May 14, 2018, constitution ("2018 Constitution"); and (ii) Circle amended its constitution in May 2022 ("Amended Constitution").

167.    Circle denies the allegations in this paragraph, except Circle admits that Circle amended its constitution in May 2022, and among other things, the Amended Constitution modified the definition of "Acquisition" by adding the words quoted in this in paragraph.

168.    Denied.

169.    Circle denies the allegations in this paragraph, except Circle admits that (i) Circle repeatedly informed FT that FT's fee demand and related actions threatened to derail the Concord transaction, which concerns FT dismissed; (ii) Concord expressed its concerns about FT's demanded fee in an April 16, 2021 letter, which includes the language quoted in the second sentence of this paragraph; (iii) Circle forwarded a letter from Concord to FT on April 19, 2021, informing FT that Concord's letter confirmed Circle's concerns that "FT's actions are demonstrably jeopardizing the proposed transactions"; and (iv) Concord expressed concern about whether it would be able to obtain "commitments for the necessary PIPE," which was a closing condition under the 2021 Term Sheet.

170.    Denied.

171.    Circle denies the allegations in this paragraph, except it admits that, as further described in the August 6, 2021 Form S-4, certain of Circle's existing shareholders agreed to escrow 35.5 million Topco Ordinary Shares that they would receive in the Concord transaction to serve as security in the event that a payment to FT in connection with the Concord transaction exceeded $45 million.

172.    Denied.

173.    Circle denies the allegations in this paragraph, except it lacks sufficient knowledge or information to form a belief about the truth of the allegations in the first sentence of this paragraph regarding FT's supposed motives or state of mind.

174.    Circle denies the allegations in this paragraph and accompanying footnote, except Circle admits that (i) this paragraph quotes a portion of the Circle Agreement; (ii) as a precondition to considering whether to "discuss treating the" Concord transaction as an alternative transaction, FT demanded that Circle (and other nonparties to the Circle Agreement) agree that the Circle Agreement would remain in effect and bind Circle, Concord, Topco and other entities; and (iii) FT offered to take a percentage of its demanded Company Sale fee in a "60%/40% stock/cash split."

175.    Circle denies the allegations in this paragraph, including insofar as they purport to summarize or characterize communications from Circle to FT, except it admits that (i) this paragraph quotes a portion of the Circle Agreement; and (ii) Circle disputed FT's interpretation of the Circle Agreement's termination provisions, including with regard to the effect of an alternative transaction.

176. Circle denies the allegations in this paragraph, except it admits (i) that it obtained the 2020 Loan in July 2020 and paid FT a fee for that transaction; and (ii) the Circle Agreement remained in effect following the 2020 Loan until Circle terminated the Agreement in accordance with Section 6.

177. Circle denies the allegations in this paragraph, except Circle admits that (i) by early 2022, it had begun efforts on the Series F Fundraising and such efforts were not known to FT because FT was not involved in them; and (ii) the Series F Fundraising was completed in May 2022.

178. Denied.

179. Denied.

180. Circle admits the allegations in the first sentence of this paragraph. Circle lacks sufficient knowledge or information to form a belief about the allegations in the second sentence, except it admits the "situation was not resolved" after the March 14 meeting. Circle denies the allegations in the third sentence.

181. Circle denies the allegations in this paragraph, except Circle admits that on April 8, 2021, Circle demanded that FT prohibit Mr. McLaughlin from contacting third parties on Circle's behalf and wall him off from all communications related to the Circle engagement, including because Mr. McLaughlin's actions harmed Circle and materially breached the Circle Agreement.

182. Admitted.

183. Circle denies the allegations in this paragraph, except Circle (i) admits that it never consummated the Concord transaction and FT did not send Circle a

invoice for the Concord transaction; (ii) admits that FT has claimed to be "ready, willing, and able to assist" Circle, including on the Concord transaction; and (iii) lacks sufficient knowledge or information to form a belief about the truth of the allegation on why FT "never even sent an invoice for any fee for the" Concord transaction.

184.    Circle denies the allegations in the first sentence of this paragraph, except it admits that on July 7, 2021, Circle, Concord, Topco, and Topco (Ireland) Merger Sub, Inc. ("Topco Sub"), entered into the 2021 BCA. Circle denies the allegations in the second sentence of this paragraph, except Circle admits that Topco and Topco Sub were formed for the purpose of the Concord transaction and Topco Sub was a wholly owned subsidiary of Topco. Circle admits the allegations in the third sentence of this paragraph.

185.    Circle denies the allegations in this paragraph and accompanying footnote, except it admits that this paragraph quotes portions of the press release and article posted at the listed URLs and that Goodwin Procter served as corporate counsel to Circle on the Concord transaction.

186.    Circle denies the allegations in this paragraph, except it admits that this paragraph and Appendix 1 quote portions of the articles listed.

187.    Circle denies the allegations in this paragraph, except Circle admits (i) the allegations in the second sentence of this paragraph; (ii) Form S-4 is an SEC form used, among other circumstances, in mergers and acquisitions; and (iii) the third and fourth sentences of this paragraph quote a portion of Topco's August 6, 2021 Form S-4 and Concord's 2021 10-K, with emphasis added by the Amended Complaint.

188.    Circled denies the allegations in this paragraph, except it admits that this paragraph quotes a portion of a Concord 10-Q signed on November 12, 2021, with emphasis added by the Amended Complaint, and portions of the definition of Company Sale under the Circle Agreement.

189.    Circle denies the allegations in this paragraph except it admits that Concord is a SPAC and that this paragraph quotes portions of an SEC document posted at the listed URL.

190.    Denied.

191.    Circle admits that the Circle Agreement sets forth any rights and obligations under the Agreement concerning press releases. Circle denies the remainder of this paragraph.

192.    Admitted.

193.    Circle denies the allegations in this paragraph, except Circle admits that (i) the Convertible Note Financing was a Capital Raise Transaction under the Circle Agreement; (ii) this paragraph quotes portions of the Circle Agreement defining Capital Raise and Transaction, with emphasis added by the Amended Complaint; and (iii) Circle paid FT the appropriate Transaction Fee for the Convertible Note Financing.

194.    Circle denies the allegations in this paragraph and accompanying footnotes, except it admits that this paragraph quotes a portion of a May 28, 2021, article on Circle's website and a portion of a May 28, 2021, article posted at the listed URL.

195.   Circle denies the allegations in this paragraph and accompanying footnote, except it admits that this paragraph quotes a portion of a July 8, 2021, joint press release by Circle and Concord, which mentions Concord's financial advisor as well as other advisors in the transaction.

196.   Circle denies the allegations in this paragraph and accompanying footnote, except it admits that a Reuters article posted at the noted URL identifies Cowen Inc. as Circle's lead capital markets advisor.

197.   Circle denies the allegations in the first sentence of this paragraph, except Circle admits that on July 21, 2021, FT sent Circle a letter that demanded that Circle issue a "corrective" press release for Circle's alleged "breaches." Circle admits the allegations in the second sentence of this paragraph.

198.   Admitted.

199.   Circle denies the allegations in this paragraph, except Circle admits that on July 21, 2021, FT sent Circle proposed press releases for the Convertible Note Financing and Concord transaction.

200.   Circle denies the allegations in this paragraph, except Circle admits that (i) FT's proposed press release contained a statement by Mr. Allaire that appeared in Circle's May 28, 2021, press release for the Convertible Note Financing, which Circle distributed to the news media and which is still publicly available; and (ii) Circle informed FT that it approved FT's proposed transaction announcement for the Convertible Note Financing, "subject to the removal of any statements purportedly made by Jeremy Allaire or any other Circle representative."

201.    Circle denies the allegations in this paragraph, including insofar as they purport to summarize or characterize communications from Circle to FT, except Circle admits that it did not approve FT's proposed press release related to the Concord transaction for the reasons stated in Circle's July 28, 2021, letter, a portion of which this paragraph quotes.

202.    Denied.

203.    Denied.

204.    Circle denies the allegations in this paragraph, except it admits that this paragraph quotes a portion of the Circle Agreement.

205.    Circle denies the allegations in this paragraph, except it (i) lacks sufficient knowledge or information to form a belief about the allegations regarding "customary deal practice"; and (ii) admits that FT has repeatedly claimed it was entitled to review "all drafts of the S-4 and business combination agreements in real time" along with related documents.

206.    Circle admits that this paragraph quotes a portion of the Circle Agreement.

207.    Admitted.

208.    Circle admits the allegations in the first sentence of this paragraph. Circle denies the allegations in the second sentence of this paragraph, except Circle admits that the Circle Agreement sets forth circumstances in which FT could potentially review and approve portions of particular disclosures.

209.    Circle denies the allegations in this paragraph, except it admits that (i) on August 4, 2021, Circle sent FT a letter advising FT that Topco's S-4 contained a disclosure relating to FT, and providing FT with the relevant language, and the Form S-4 was subsequently filed with the SEC on August 6, 2021; and (ii) Circle admits that FT responded to Circle's August 4 letter on August 5, 2021, and that FT's letter made various false allegations about supposed inaccuracies and omissions.

210.    Admitted.

211.    Denied.

212.    Denied.

213.    Denied.

214.    Denied.

215.    Denied.

216.    Circle denies the allegations in this paragraph, except it admits that on October 4, 2021, Amendment Number 1 to Form S-4 was filed with the SEC for Topco, and Circle participated in the filing.

217.    Circle denies the allegations in this paragraph, except it admits that on December 23, 2021, Amendment Number 2 to Form S-4 was filed with the SEC for Topco, and Circle participated in the filing.

218.    Circle denies the allegations in this paragraph, except it admits that on May 6, 2022, Amendment Number 3 to Form S-4 was filed with the SEC for Topco, and Circle participated in the filing.

219.    Circle denies the allegations in this paragraph, except it admits that on July 11, 2022, Amendment Number 4 to Form S-4 was filed with the SEC for Topco, and Circle participated in the filing.

220.    Circle denies the allegations in this paragraph, except it admits that on August 30, 2022, Amendment Number 5 to Form S-4 was filed with the SEC for Topco, and Circle participated in the filing.

221.    Circle denies the allegations in this paragraph, except it admits that on October 20, 2022, Amendment Number 6 to Form S-4 was filed with the SEC for Topco, and Circle participated in the filing.

222.    Circle denies the allegations in this paragraph, except it admits that on November 14, 2022, Amendment Number 7 to Form S-4 was filed with the SEC for Topco, and Circle participated in the filing.

223.    Denied.

224.    Circle denies the allegations in this paragraph, except Circle admits that it did not provide FT a complete copy of Topco's amended Form S-4s, and accompanying documents, before those documents were filed with the SEC.

225.    Denied.

226.    Circle lacks sufficient knowledge or information to form a belief about the truth of the allegation in the first sentence or footnote because the link does not lead to a live website page. Circle admits that as the 2021 BCA approached its termination date, Circle and Concord negotiated a new deal memorialized on February 16, 2022, in the 2022 Transaction Agreement, and that Circle and Concord

terminated the 2021 BCA on that same date. Circle admits that the 2022 Transaction Agreement and 2021 Transaction Agreements set forth their respective terms. Circle denies the remainder of this paragraph.

227.    Admitted.

228.    Circle denies the allegations in this paragraph, except Circle lacks sufficient knowledge or information to form a belief about the truth of the allegations regarding whether FT first introduced Circle to Concord.

229.    Circle denies the allegations in this paragraph and accompanying footnote, except Circle (i) admits that its February 17, 2022 press release cited in the footnote to this paragraph announced the 2022 Transaction Agreement, did not mention FT, said that the contract set "Circle's enterprise value at $9 billion," and identified various advisors to the parties, including Concord's "exclusive financial advisor"; and (ii) Circle admits that it did not send FT the draft 2022 Transaction Agreement "and other documents before they were publicly filed."

230.    Circle denies the allegations in this paragraph, except it admits that on March 25, 2022, Circle's Board determined in good faith that Good Reason existed to terminate the Circle Agreement, and on April 8, 2022, Circle terminated the Circle Agreement when it sent FT the notice of termination that this paragraph replicates ("Circle Agreement Termination Notice").

231.    Circle denies the allegations in this paragraph, except Circle lacks sufficient knowledge or information to form a belief about the truth of the allegations regarding what "FT Partners assumes."

232.    Denied.

233.    Denied.

234.    Circle denies the allegations in this paragraph, except Circle admits that its Board determined in good faith that FT's actions materially breached FT's obligations under the Circle Agreement in a manner causing or likely to cause material harm to Circle, constituting Good Reason to terminate the Circle Agreement, and the Circle Agreement Termination Notice so notified FT.

235.    Circle denies the allegations in this paragraph, except Circle admits that the 2021 BCA valued Circle at approximately $4.5 billion, and the 2022 Transaction Agreement valued Circle at approximately $9 billion.

236.    Denied.

237.    Denied.

238.    Denied.

239.    Denied.

240.    Circle denies the allegations in this paragraph, except Circle admits that its Board determined in good faith that "FT Partners has and has had conflicts of interest materially detrimental to Circle that have not been waived by Circle" constituting Good Reason to terminate under Section 6 of the Circle Agreement, and the Circle Agreement Termination Notice so notified FT.

241.    Denied.

242.    Denied.

243.    Denied.

244.    Denied.

245.    Denied.

246.    Circle denies the allegations in this paragraph, except Circle admits that its Board determined in good faith that "neither Steven J. McLaughlin nor Randall Little [was] the lead or co-lead advisors for FT Partners representing FT Partners and actively involved in any prospective Transaction," constituting Good Reason to terminate under Section 6 of the Circle Agreement, and the Circle Agreement Termination Notice so notified FT.

247.    Circle denies the allegations in this paragraph, except Circle admits that (i) the second sentence of this paragraph quotes a portion of the Circle Agreement; and (ii) FT sent various letters in which it has claimed that Mr. McLaughlin remains "ready, willing, and able to assist" Circle.

248.    Denied.

249.    Denied.

250.    Denied.

251.    Denied.

252.    Circle denies the allegations in this paragraph and accompanying footnote, except Circle admits that (i) this paragraph quotes portions of the Circle Agreement with emphasis added by the Amended Complaint; and (ii) Circle entered into and consummated the Series F Fundraising within 12 months of terminating the Circle Agreement.

253.    Denied.

254.    Denied.

255.    Circle denies the allegations in this paragraph, except Circle admits that it did not continue to pay FT quarterly retainers under the Circle Agreement after it terminated the agreement.

256.    Circle denies the allegations in this paragraph and accompanying footnote, except Circle admits that it terminated the Circle Agreement on April 8, 2022 and announced the Series F Fundraising on April 12, 2022.

257.    Admitted that the Series F Fundraising was an approximately $400 million funding round with affiliates of BlackRock, Inc., Fidelity Management and Research, Marshall Wace LLP, and Fin Capital participating as investors.

258.    Circle denies the allegations in this paragraph and accompanying footnote, except (i) Circle admits that the footnote quotes a portion of the Circle Agreement; and (ii) Circle lacks sufficient knowledge or information to form a belief about the truth of the allegations in the last sentence of this paragraph.

259.    Denied.

260.    Circle denies the allegations in this paragraph, except Circle admits that the Series F Fundraising raised approximately $400 million and closed on May 9, 2022 and that Circle did not pay FT a "Capital Raise fee 'simultaneously with, or prior to, the consummation'" of the Series F Fundraising.

261.    Circle denies the allegations in this paragraph, except Circle admits that on August 19, 2022, FT sent Circle an invoice demanding a $28.07 million

"Transaction Fee" for the Series F Fundraising and demanded that Circle provide a complete set of documents for the Series F Fundraising.

262.    Circle denies the allegations in the first sentence of this paragraph, except Circle admits that on October 10, 2022, Circle sent FT a letter stating that the Circle Agreement "has been effectively terminated on April 8, 2022 and Circle has no outstanding financial obligations to FT Partners." Circle admits the last sentence of this paragraph.

263.    Circle denies the allegations in this paragraph, except Circle admits that this paragraph quotes a portion of the Circle Agreement.

264.    Circle denies the allegations in this paragraph, except Circle admits that this paragraph quotes a portion of the Circle Agreement.

265.    Denied.

266.    Denied.

267.    Circle denies the allegations in this paragraph, except Circle admits that Circle's Board determined in good faith that Good Reason existed to terminate the SeedInvest Agreement, and on August 26, 2022, Circle terminated the SeedInvest Agreement when it sent FT the notice of termination that this paragraph replicates ("SeedInvest Agreement Termination Notice").

268.    Circle denies the allegations in this paragraph, except Circle admits that the SeedInvest Agreement Termination Notice did not include as a Good Reason to terminate the SeedInvest Agreement that FT materially breached its obligations under the Agreement.

269.    Denied.

270.    Denied.

271.    Denied.

272.    Circle denies the allegations in this paragraph, except Circle admits that its Board determined in good faith that "FT Partners has and has had conflicts of interest materially detrimental to Circle that have not been waived by Circle" constituting Good Reason to terminate under Section 6 of the SeedInvest Agreement, and the SeedInvest Agreement Termination Notice so notified FT.

273.    Denied.

274.    Circle denies the allegations in this paragraph, except Circle admits the allegations in the last sentence of this paragraph.

275.    Denied.

276.    Denied.

277.    Denied.

278.    Circle denies the allegations in this paragraph, except Circle admits that its Board determined in good faith that "neither [Steven J. McLaughlin] nor Randall Little [was] the lead or co-lead advisor for FT Partners representing FT Partners and actively involved in any prospective Transaction" constituting Good Reason to terminate under Section 6 of the SeedInvest Agreement, and the SeedInvest Agreement Termination Notice so notified FT.

279.    Circle denies the allegations in this paragraph and accompanying footnote, except Circle admits (i) the allegations in the last sentence of the footnote

44

accompanying this paragraph; and (ii) that FT had sent a letter in September 2022 claiming that Mr. McLaughlin remains "ready, willing, and able to assist SeedInvest in any transaction."

280.    Circle denies the allegations in this paragraph, except Circle admits that it sent the SeedInvest Agreement Termination Notice on August 26, 2022, and on August 19, 2022, FT sent Circle an invoice demanding a "Transaction Fee" for the Series F Fundraising.

281.    Denied.

282.    Denied.

283.    Denied.

284.    Denied.

285.    Denied.

286.    Circle denies the allegations in this paragraph, except Circle admits that it did not continue to pay FT quarterly retainers under the SeedInvest Agreement after it terminated the Agreement.

287.    Circle denies the allegations in this paragraph, except Circle admits (i) the allegations in the first sentence in this paragraph; and (ii) that the Asset Purchase Agreement sets forth the terms of the SeedInvest transaction.

288.    The allegations in this paragraph that concern the other "Defendants" are directed at other, now-dismissed parties, and therefore no response is required. Circle denies the remainder of this paragraph.

289.    Admitted.

290.    Circle denies the allegations in this paragraph, except Circle admits that this paragraph quotes a portion of the SeedInvest Agreement.

291.    Circle denies the allegations in this paragraph, except Circle admits that this paragraph quotes portions of the SeedInvest Agreement and StartEngine's October 24, 2022, 8-K.

292.    Circle denies the allegations in this paragraph, except Circle admits that (i) on November 8, 2022, FT sent Circle an invoice demanding a "Transaction Fee" for the SeedInvest transaction and demanding "information relevant to determining Aggregate Consideration"; and (ii) Circle admits that on November 28, 2022, Circle responded that Circle terminated the SeedInvest Agreement on August 26, 2022 and that it had "no duty to furnish the information requested in [FT's] letter."

293.    Circle denies the allegations in this paragraph, except Circle admits this paragraph quotes a portion of the SeedInvest Agreement.

294.    Circle denies the allegations in this paragraph, except Circle admits (i) the allegations in the first sentence of this paragraph; and (ii) FT is not entitled to any fee in connection with the Concord transaction.

295.    Circle denies the allegations in this paragraph, except (i) Circle lacks sufficient knowledge or information to form a belief about the truth of the allegation concerning why FT "never sent Circle an invoice"; (ii) Circle admits that FT refused to negotiate in good faith over its fee and continued to take the bad-faith position that Circle pay a Company Sale fee for the Concord transaction and proposed "accepting part or all of it in stock, deferring part of the payment, or restructuring the payment";

(iii) FT took the position that if the Concord transaction "constitutes an 'alternative transaction,'" then Circle "would still owe FT Partners Transaction Fees upon any future Company Sale or Capital Raise (of which there could be numerous, even post the Transaction)"; and (iv) an alternative transaction fee on the Concord transaction would have been substantially less than the Company Sale fee that FT demanded.

296.    Denied.

297.    Circle denies the allegations in this paragraph, except Circle admits this paragraph describes information published by the *Financial Times* on December 6, 2022.

298.    Circle denies the allegations in this paragraph, except Circle admits that this paragraph quotes a portion of the Circle Agreement.

299.    Circle lacks sufficient knowledge or information to form a belief about the truth of the allegations in this paragraph.

300.    Circle denies the allegations in this paragraph, except Circle admits that the SeedInvest transaction closed on May 5, 2023.

301.    Circle denies the allegations in this paragraph and the accompanying footnote, except Circle admits that (i) on November 17, 2023, FT sent Circle an invoice dated November 16, 2023 demanding a "Transaction Fee" and expenses for the SeedInvest transaction and demanding "sufficient documentation for FT Partners to calculate the Transaction Fee"; and (ii) FT's invoice said that the claimed "fee calculation . . . may change subject to evaluation of all relevant information."

302.    Circle denies the allegations in this paragraph and accompanying footnote, except Circle admits that (i) Circle "has not paid [FT a] Transaction Fee" for the SeedInvest transaction; and (ii) the footnote to this paragraph quotes a portion of the SeedInvest Agreement.

303.    Circle denies the allegations in this paragraph, except Circle admits that this paragraph quotes a portion of the SeedInvest Agreement.

304.    Circle denies the allegations in this paragraph, except Circle admits that a portion of this paragraph quotes the SeedInvest Agreement.

305.    Circle denies the allegations in this paragraph, except Circle admits that on August 18, 2023, Circle issued 3.5% of its fully diluted equity to Coinbase, which Coinbase gave an estimated fair value of $51.1 million according to its 10-Q.

306.    Denied.

307.    Circle denies the allegations in this paragraph, except Circle admits that on November 17, 2023, FT sent Circle an invoice dated November 16, 2023 that demanded a $3.577 million "Capital Raise" fee and documents related to the transaction involving Coinbase, which demands Circle has denied.

308.    Circle denies the allegations in this paragraph, except Circle admits that this paragraph quotes a portion of the Circle Agreement.

309.    Circle denies the allegations in this paragraph, except Circle admits that this paragraph quotes a portion of the Circle Agreement.

310.    Denied.

311.    Admitted.

312.    Admitted.

313.    This paragraph does not contain any allegations to which a response is required. To the extent that a response is required, Circle lacks sufficient knowledge or information to form a belief about the truth of the allegations in the first sentence in this paragraph and denies the remainder of this paragraph.

## COUNT ONE

314.    Circle is not obligated to answer this paragraph, as the Court dismissed Count One. To the extent that Circle is required to answer this paragraph, Circle repeats its answers to paragraphs 1 through 313 as though fully set forth in this answer to paragraph 314.

315.    Circle is not obligated to answer this paragraph, as the Court dismissed Count One. To the extent that Circle is required to answer this paragraph, it denies all allegations.

## COUNT TWO

316.    Circle repeats its answers to paragraphs 1 through 313 as though fully set forth in this answer to paragraph 316.

317.    Admitted, subject to Circle's valid termination of the contract.

318.    Denied.

319.    Denied.

320.    Denied.

321.    Denied.

322.    Denied.

323.    Denied.

## **COUNT THREE**

324.   Circle repeats its answers to paragraphs 1 through 313 as though fully set forth in this answer to paragraph 324.

325.   Admitted, subject to Circle's valid termination of the SeedInvest Agreement and that Circle denies that the other, now-dismissed defendants, were parties to the SeedInvest Agreement.

326.   Denied.

327.   The allegations in this paragraph that concern the other "Defendants," are directed at other, now-dismissed, parties, and therefore no response is required. Circle denies the remainder of this paragraph.

328.   The allegations in this paragraph that concern the other "Defendants," are directed at other, now-dismissed, parties, and therefore no response is required. Circle denies the remainder of this paragraph.

## **COUNT FOUR**

329.   Circle is not obligated to answer this paragraph, as the Court dismissed Count Four. To the extent that Circle is required to answer this paragraph, Circle repeats its answers to paragraphs 1 through 313 as though fully set forth in this answer to paragraph 329.

330.   Circle is not obligated to answer this paragraph, as the Court dismissed Count Four. To the extent that Circle is required to answer this paragraph, it denies all allegations.

331.   Circle is not obligated to answer this paragraph, as the Court dismissed Count Four. To the extent that Circle is required to answer this paragraph, Circle

50

lacks sufficient knowledge or information to form a belief about the truth of the allegation on why FT "never sent an invoice for a" fee for the Concord transaction and denies the remainder of this paragraph.

332.    Circle is not obligated to answer this paragraph, as the Court dismissed Count Four. To the extent that Circle is required to answer this paragraph, it denies all allegations.

333.    Circle is not obligated to answer this paragraph, as the Court dismissed Count Four. To the extent that Circle is required to answer this paragraph, it denies all allegations.

334.    Circle is not obligated to answer this paragraph, as the Court dismissed Count Four. To the extent that Circle is required to answer this paragraph, it denies all allegations.

## **COUNT FIVE**

335.    Circle is not obligated to answer this paragraph, as the Court dismissed Count Five. To the extent that Circle is required to answer, Circle repeats its answers to paragraphs 1 through 313 as though fully set forth in this answer to paragraph 335.

336.    Circle is not obligated to answer this paragraph, as the Court dismissed Count Five. To the extent that Circle is required to answer this paragraph, the allegations in this paragraph that concern the other "Defendants," are directed at other, now-dismissed, parties, and therefore no response is required, and Circle denies the remainder of this paragraph.

337.    Circle is not obligated to answer this paragraph, as the Court dismissed Count Five. To the extent that Circle is required to answer this paragraph, the allegations in this paragraph that concern the other "Defendants," are directed at other, now-dismissed, parties, and therefore no response is required, and Circle denies the remainder of this paragraph.

338.    Circle is not obligated to answer this paragraph, as the Court dismissed Count Five. To the extent that Circle is required to answer this paragraph, the allegations in this paragraph that concern the other "Defendants," are directed at other, now-dismissed, parties, and therefore no response is required, and Circle denies the remainder of this paragraph.

339.    Circle is not obligated to answer this paragraph, as the Court dismissed Count Five. To the extent that Circle is required to answer this paragraph, the allegations in this paragraph that concern the other "Defendants," are directed at other, now-dismissed, parties, and therefore no response is required, and Circle denies the remainder of this paragraph.

340.    Circle is not obligated to answer this paragraph, as the Court dismissed Count Five. To the extent that Circle is required to answer this paragraph, the allegations in this paragraph that concern the other "Defendants," are directed at other, now-dismissed, parties, and therefore no response is required, and Circle denies the remainder of this paragraph.

## COUNT SIX

341.    Circle is not obligated to answer this paragraph, as the Court dismissed Count Six. To the extent that Circle is required to answer, Circle repeats its answers

to paragraphs 1 through 313 as though fully set forth in this answer to paragraph 341.

342.    Circle is not obligated to answer this paragraph, as the Court dismissed Count Six. To the extent that Circle is required to answer this paragraph, it denies all allegations.

343.    Circle is not obligated to answer this paragraph, as the Court dismissed Count Six. To the extent that Circle is required to answer this paragraph, it denies all allegations.

344.    Circle is not obligated to answer this paragraph, as the Court dismissed Count Six. To the extent that Circle is required to answer this paragraph, it denies all allegations.

345.    Circle is not obligated to answer this paragraph, as the Court dismissed Count Six. To the extent that Circle is required to answer this paragraph, Circle denies the allegations in this paragraph, except Circle admits that FT has demanded fees it is not owed under the Circle Agreement and Circle has not paid those amounts.

346.    Circle is not obligated to answer this paragraph, as the Court dismissed Count Six. To the extent that Circle is required to answer this paragraph, it denies all allegations.

347.    Circle is not obligated to answer this paragraph, as the Court dismissed Count Six. To the extent that Circle is required to answer this paragraph, it denies all allegations.

## COUNT SEVEN

348.    Circle is not obligated to answer this paragraph, as the Court dismissed Count Seven. To the extent that Circle is required to answer, Circle repeats its answers to paragraphs 1 through 313 as though fully set forth in this answer to paragraph 348.

349.    Circle is not obligated to answer this paragraph, as the Court dismissed Count Seven. To the extent that Circle is required to answer this paragraph, the allegations in this paragraph that concern the other "Defendants," are directed at other, now-dismissed, parties, and therefore no response is required, and Circle denies the remainder of this paragraph.

350.    Circle is not obligated to answer this paragraph, as the Court dismissed Count Seven. To the extent that Circle is required to answer this paragraph, the allegations in this paragraph that concern the other "Defendants," are directed at other, now-dismissed, parties, and therefore no response is required, and Circle denies the remainder of this paragraph.

351.    Circle is not obligated to answer this paragraph, as the Court dismissed Count Seven. To the extent that Circle is required to answer this paragraph, the allegations in this paragraph that concern the other "Defendants," are directed at other, now-dismissed, parties, and therefore no response is required, and Circle denies the remainder of this paragraph.

352.    Circle is not obligated to answer this paragraph, as the Court dismissed Count Seven. To the extent that Circle is required to answer this paragraph, the allegations in this paragraph that concern the other "Defendants," are directed at

other, now-dismissed, parties, and therefore no response is required, and denies the remainder of this paragraph, except Circle admits that it did not pay FT for "advisory services" after Circle terminated the SeedInvest Agreement.

353.   Circle is not obligated to answer this paragraph, as the Court dismissed Count Seven. To the extent that Circle is required to answer this paragraph, the allegations in this paragraph that concern the other "Defendants," are directed at other, now-dismissed, parties, and therefore no response is required, and Circle denies the remainder of this paragraph.

354.   Circle is not obligated to answer this paragraph, as the Court dismissed Count Seven. To the extent that Circle is required to answer this paragraph, the allegations in this paragraph that concern the other "Defendants," are directed at other, now-dismissed, parties and therefore no response is required, and Circle denies the remainder of this paragraph.

## PRAYER FOR RELIEF

Paragraphs (a) through (r) following the Prayer for Relief each contain a request for relief to which no response is required. To the extent that a response is required, Circle denies that FT is entitled to any relief from Circle in connection with the Amended Complaint.

## AFFIRMATIVE AND OTHER DEFENSES

Circle states the following defenses to FT's claims based on the information available to Circle at this time. Circle reserves the right to amend its Answer to add additional defenses not presented below, including those defenses revealed during

discovery. By raising the defenses below, Circle does not assume any burden of proof that the applicable law may place on other parties.

## FIRST DEFENSE
### (Failure to state a claim)

1.      Circle incorporates its answers to paragraphs 1–354 above.

2.      FT's claims are barred, in whole or in part, because FT fails to state a claim upon which relief may be granted.

## SECOND DEFENSE
### (FT's Material Breaches of the Circle Agreement)

3.      FT's claims are barred, in whole or in in part, because it has committed a number of uncured, material breaches of the Circle Agreement.

4.      Among other things, FT materially breached the Circle Agreement by refusing to negotiate in good faith the appropriate compensation for FT for the Concord transaction, discussing its fee demand with third parties without Circle's authorization, and breaching the implied covenant of good faith and fair dealing such as by depriving Circle of the benefits of the Agreements, frustrating the parties' intent, frustrating the Agreements' purposes, and acting dishonestly in the advice and services that it provided to Circle.

5.      FT's material breaches injured Circle and defeated the object of the parties in making the Circle Agreement.

6.      FT's uncured, material breaches excuse Circle from any performance since the time of the first material breach.

### THIRD DEFENSE
**(Payment)**

7.      FT's claims are barred, in whole or in part, because Circle has already paid FT all fees, retainer amounts, and expenses that FT was due under the Agreements.

8.      Indeed, FT admits that Circle has already paid FT its fees for the 2020 Loan and Convertible Note Financing, and FT implicitly admits that Circle paid FT quarterly retainers before terminating the Agreements. *See, e.g.*, Am. Compl. ¶¶ 15, 109 & n.5, 176, 193, 255, 286.

### FOURTH DEFENSE
**(Unclean hands)**

9.      FT's claims are barred, in whole or in part, by the doctrines of unclean hands.

10.     As detailed in the Second Defense above and Seventh Defense below, FT has committed immoral and unconscionable conduct that has injured Circle.

11.     FT's immoral, unconscionable conduct leaves it with unclean hands.

12.     FT's unclean hands prevent it from obtaining any equitable or declaratory relief in this action.

### FIFTH DEFENSE
**(Election to treat contract as terminated)**

13.     FT's claims are barred, in whole or in part, by FT's election to treat Circle's alleged anticipatory repudiation as an anticipatory breach.

14.     Faced with an alleged anticipatory repudiation, FT had "two mutually exclusive options": either "elect to treat the repudiation as an anticipatory breach and

seek damages for breach of contract, thereby terminating the contractual relation between the parties" or "continue to treat the contract as valid and await the designated time for performance before bringing suit." *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) (applying New York law).

15.    Circle has terminated the Agreements and has declared, and continues to declare, its intention to not pay FT under those Agreements any of FT's demanded fees, retainer amounts, or expenses after those terminations, or perform under any other provision of the Agreements that did not survive termination.

16.    FT elected to treat Circle's termination of the Agreements as anticipatory breaches by suing Circle for breach of contract and damages that allegedly arise from Circle's "purported" termination of the contracts and refusal to pay fees for transactions after the terminations, Am. Compl. ¶¶ 293, 319(a), (e), 327(a), and it alleged in the Amended Complaint that Circle's terminations constitute "an anticipatory breach" of each contract, *id.* ¶¶ 293, 319(e).

17.    FT's election to treat Circle's terminations of the Agreements as anticipatory breaches, terminates any alleged continuing contractual relationship between the parties.

18.    FT, therefore, may not seek any relief inconsistent with FT's choice to terminate the contract, or beyond what is available to FT given its choice to terminate the contract.

## SIXTH DEFENSE
### (Agency)

19.    FT's claims are barred, in whole or in part, because FT acted as Circle's agent, and Circle was thus free to terminate its relationship with FT.

20.    The Agreements, along with the services that FT provided Circle, created an agency relationship between FT and Circle. The purpose of the Agreements was to retain FT as Circle's exclusive financial advisor to act on Circle's behalf as its agent. FT put itself in a position of trust and confidence by agreeing to be Circle's "exclusive financial and strategic advisor" under the Agreements who would provide Circle investment banking "financial advice and assistance," including to solicit, negotiate, structure, and advise on potential Transactions (as defined by the Agreements) on Circle's behalf. Likewise, FT put itself in a fiduciary position once FT undertook to act as Circle's financial advisor on potential Transactions, or alternative transactions like the Concord transaction, and to help solicit, negotiate, structure, and advise on such transactions on Circle's behalf. Circle's management and Board had a right to rely on these services and advice.

21.    While the Agreements created a position of trust and confidence for FT, they also gave Circle the unfettered discretion to enter any Transaction or transaction. And the parties' agreement that FT would advise on the Concord transaction likewise gave Circle final authority on whether to enter such a transaction and, if so, on what terms. FT was therefore always meant to be under Circle's direction and control and acting on its behalf.

22.     Although FT added a provision to the Agreements purporting to disclaim "a fiduciary or agency relationship," this purported disclaimer of a fiduciary and agency relationship is inoperative because of the agency and fiduciary relationship that the Agreements and the parties' conduct created.

23.     Because FT was Circle's agent, Circle had the power to revoke FT's authority at any moment. FT's claims are thus barred to the extent that they seek to impose any ongoing relationship between FT and Circle despite Circle's termination of each Agreement.

## SEVENTH DEFENSE
### (Faithless servant)

24.     Circle incorporates paragraphs 20–22 from the Sixth Defense.

25.     FT's claims are barred, in whole or in part, by the faithless servant doctrine.

26.     As both Circle's agent and exclusive financial advisor, FT owed Circle fiduciary duties, including the duties of loyalty and good faith. FT breached those duties by, among other things:

     a.    Downplaying the risks that FT's demanded fee presented to Circle and the Concord transaction;

     b.    Attempting to use Circle's interest in consummating the Concord transaction as leverage to force Circle to pay an excessive fee that Circle did not owe;

c.    Adopting an unreasonable and bad-faith interpretation of the parties' agreement in an effort to force Circle to agree to an excessive fee for FT's services;

d.    Allowing its self-interest to supersede the best interests of its client, Circle; and

e.    Representing the position of Concord and other third parties on FT's demanded fee either dishonestly or with an insufficiently thorough and disinterested investigation.

27.    FT's misconduct and unfaithfulness, including the above examples, also substantially violated the Agreements.

## EIGHTH DEFENSE
### (Unenforceable or Void as against Public Policy)

28.    FT's claims are barred, in whole or in part, because portions of the Agreements are unenforceable or illegal.

29.    Sections 7(c) and 9 in the Agreements are void against public policy to the extent that they require Circle to violate state or federal law. Section 7(c) of the Circle Agreement states that if Circle "is required by law to make any filing with any government authority . . . which mentions FT Partners or the advice rendered by FT Partners hereunder, such disclosure shall be in a form and substance satisfactory to FT Partners and its counsel, in their sole discretion." The SeedInvest Agreement has an identical provision. Section 9 of each Agreement provides that "any press release it may issue (jointly with an acquirer or solely) announcing a Transaction will contain a reference to FT Partners' role as exclusive financial and strategic advisor to the

Company and its board of directors in connection with such Transaction." To the extent that either provision would require Circle to make a statement that violates any applicable law, it is illegal and void against public policy.

## NINTH DEFENSE
### (Failure to Mitigate Damages)

30.    FT's claims are barred, in whole or in part, because it has failed to mitigate its damages.

April 28, 2025

Respectfully submitted,

*/s/ Adam L. Hoeflich*

Adam L. Hoeflich (*Pro Hac Vice*)
Abby M. Mollen (*Pro Hac Vice*)
Joshua P. Ackerman (*Pro Hac Vice*)
BARTLIT BECK LLP
54 W. Hubbard Street, Suite 300
Chicago, IL 60654
(312) 494-4400
adam.hoeflich@bartlitbeck.com
abby.mollen@bartlitbeck.com
joshua.ackerman@bartlitbeck.com

Eric F. Dement (*Pro Hac Vice*)
BARTLIT BECK LLP
1801 Wewatta Street, Suite 1200
Denver, CO 80202
(303) 592-3152
eric.dement@bartlitbeck.com

Kevin R. Puvalowski
Christina Karam
PETRILLO KLEIN & BOXER LLP
655 Third Avenue, 22nd Floor
New York, NY 10017
(212) 370-0330
kpuvalowski@pkbllp.com
ckaram@pkbllp.com

*Counsel for Circle Internet Financial Limited*

## **CERTIFICATE OF SERVICE**

The undersigned attorney certifies that on this day, April 28, 2025, he has filed the foregoing document via the Court's CM/ECF system, which will send notification of the filing to all counsel of record in this action registered with the Court's CM/ECF system.

*/s/ Adam L. Hoeflich*
Adam L. Hoeflich